## ANNIE ADAMS' CASE.

### Franklin.    Opinion March 13, 1925.

*The findings, on questions of fact, by the Chairman of the Industrial Accident Commission, in absence of fraud, are final, and not reviewable in respect to the credibility and weight of the evidence, if there is any evidence in support of the finding.*

In the instant case, availing himself of all of the evidence submitted, the commissioner decided that the death was a direct result of the accidental injury, and while the court does not pass upon the question whether the husband of claimant died from typhoid fever, acquired subsequent to the accident, it does find that there is sufficient evidence in the record to justify the commissioner in his finding, and the decree of the single Justice should not be reversed.

On appeal. John Adams, husband of claimant, a dependent widow, on March 2, 1924, while in the employ of Lawrence Plywood Corporation at Carrabasset, Maine, as a carpenter, fell from a staging about fifteen feet and struck the ground in a sitting posture producing paralysis of his right leg and certain internal organs. About ten days later while in the hospital he was taken with "typhoid fever" and died on May 5, 1924. The petitioner alleged that death resulted from the injury while the respondents contended that decedent died as a result of the fever. Upon a hearing the Chairman of the Industrial Accident Commission awarded compensation and from an affirming decree the respondents appealed. Appeal dismissed, with costs. Decree affirmed.

The opinion sufficiently states the case.

*Butler & Butler*, for claimant.

*Robert Payson*, for respondents.

SITTING: CORNISH, C. J., PHILBROOK, MORRILL, WILSON, STURGIS, BARNES, JJ.

BARNES, J. This is an appeal from the decree of a single Justice, affirming the decision of the Industrial Accident Commissioner that the husband of the petitioner, while working as a carpenter in the employ of an assenting employer, received a personal injury, by accident arising out of and in the course of his employment, as a direct result of which he died.

There is no controversy over the fact of employment, nor that the employee, on March 2, 1924, fell from the level of a staging, a distance of fifteen feet, more or less, to the frozen ground, striking thereon, in a sitting posture, with such force that his legs and certain internal organs were for several days paralyzed.

He was promptly removed to a hospital, and for twelve days his recovery seemed progressing, but then a slight rise of temperature was noted; the next day his temperature rose above 103 degrees, and the malady ran its course to a fatal termination on May 5, following. The only question for solution by the Commissioner was whether or not he died as a result of the injury received from the fall upon the frozen earth; and his decision answers that question in the affirmative, as above stated.

Appellant urges that the death was caused wholly by typhoid fever, not contracted while in the course of the employment; that the the injury was not the cause of the death, and requests this court to reverse the decision of the Commissioner. But the statute governing provides that the "decision, in the absence of fraud, upon all questions of fact shall be final," though it further reads, "the law court may, after consideration, reverse or modify any decree made by a justice, based upon an erroneous ruling or finding of law." The Law Court must, therefore, review the decision of the commissioner, upon appeal, and cases wherein the field of inquiry by this court has been carefully limited are numerous and recent.

"The court will review the commissioner's reasoning but will not, in the absence of fraud, review his findings as to the credibility and weight of evidence." *Mailman's Case*, 118 Maine, 172.

"It is not for the reviewing court to say if the evidence was strong enough to justify the findings." *Williams' Case*, 122 Maine, 477.

The commissioner, "in the determination of questions of fact, is permitted to draw such inferences from the evidence and all the circumstances as a reasonable man would draw." *Sanderson's Case,* 224 Mass., 558.

The decision of the commissioner will not be reversed, when "there is some competent evidence to support it, even though slender; where a state of facts is shown more consistent with the commissioner's finding than with any other theory; and where the finding is supported by inferences which are not unnatural, and not irrational." *Mailman's Case,* supra, or where "the finding is supported by rational and natural inferences from proved facts." *Patrick* v. *Ham Co.,* 119 Maine, 510, where "there was sufficient, competent evidence on which his findings may rest." *Larrabee's Case,* 120 Maine, 242, where, "the evidence, although slight, is sufficient to make a reasonable man conclude in the claimant's favor on the vital points." *Marchavich's Case,* 123 Maine, 495, or "where some competent evidence supports the finding." *Ross' Case,* 124 Maine, 107.

"It is when the commissioner decides facts without evidence, or upon illegal or inadmissible evidence, that an error of law is committed which this court is required to correct."

*Orf's Case,* 122 Maine, 114; *Spiller's Case,* 122 Maine, 492; *Mailman's Case,* 118 Maine, 172.

In the case under discussion, the injured man was conveyed, by team and train, for the greater part of a day, from his employer's boarding house to a distant hospital, and he died from typhoid fever, or from infection of the mesentary and consequent septicemic complications, or from other indistinguishable cause.

There was no autopsy. The proprietor of the hospital was the only witness as to cause of death, and symptoms prior thereto. He testified to finding, at first, paralysis of the right leg, intestines and bladder, and tenderness and swelling about the hip, and extending over towards the spine, but that these disabilities were yielding to treatment, and the patient recovering during the first twelve days.

Appellant urges that the man died of typhoid fever, a disease introduced into the human system, generally, if not always, by receiving its distinctive germ through the mouth.

The rise of temperature and other evidences of presence of fever occurred well within the period of incubation of the typhoid germ. But the medical testimony is clear that there were, during the period

involved, no typhoid cases at the boarding house, nor in the hospital where the man died, and none in the village where the hospital is situated.

Much is made of the fact that on the way to the hospital a stop was made, and a mug of tea drunk by the injured man, but there is no evidence of the presence of typhoid at the source where the tea was procured. A helpful test for typhoid was applied at intervals, twice without the positive reaction, but on the third time, as read by the medical witness, the result showed the presence of typhoid,—"not strongly positive—it was beginning. I didn't bother to send the test away. I had the symptoms and everything. I knew what it was." So the hospital authority decided the sickness developing before him to be typhoid fever.

It does not, however, follow that the man died of typhoid fever, and it nowhere appears in the record that the commissioner so decided. What would have been revealed as the result of an autopsy, of exhaustive examination of the "test" the commissioner could not know. The evidence shows that the medical witness knew internal injuries would be expected to follow a fall such as the patient had suffered; that septicemic conditions would be not unusual, but he says he "had no experience in septicemia cases . . . never had one and that is why I suppose I never thought of it." He did testify that he found congestion of the lungs before his patient died; that he would expect to find septicemia as the cause of congestion of the lungs, and that the latter is not a characteristic of typhoid fever, but, on the contrary, "is rare for typhoid." Availing himself of all the evidence submitted, the commissioner decided that the death was a direct result of the accidental injury. There is sufficient evidence in the record to justify the commissioner, and the decree of the single Justice will not be reversed.

*Appeal dismissed.*
*Decree affirmed, with costs.*