ARTHUR P. GOOLDRUP
*vs.*
SCOTT PAPER COMPANY
HOLLINGSWORTH & WHITNEY DIVISION
AND
LIBERTY MUTUAL INSURANCE COMPANY

Kennebec.   Opinion, April 28, 1958.

*Jerome G. Daviau,* for plaintiff.

*Forrest E. Richardson,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ.  BELIVEAU, J., sat at argument but retired before the opinion was adopted.

TAPLEY, J.     On appeal.   The proceedings before the Commission were on a petition for review filed by the employer under authority of Sec. 38, Chap. 31, R. S. 1954.  The Commission found that compensation was properly suspended as of June 29, 1956.  A Justice of the Superior Court by a *pro forma* ruling decreed that the compensation was properly suspended.  The employee appealed from the decree, which brings the matter before this court.

Arthur P. Gooldrup was employed by the Hollingsworth & Whitney Division of the Scott Paper Company and while so employed suffered injury on April 20, 1956 by striking his head against a piece of metal which resulted in a cut on the top of his head.  The employee on June 4, 1956 entered into an agreement for payment of compensation with his employer and the insurance carrier for payment of compensation at the rate of $30.00 per week "during present period of incapacity beginning 5-12-56."  This agreement was approved by the Commissioner of Labor (Chap. 31, Sec. 32, R. S. 1954).  The agreement recites the fact that the injury was sustained on April 20, 1956 and the nature of the injury causing disability was "cut top of head."  On July 6, 1956 the employer petitioned the Industrial Accident Commission for a review of incapacity and compensation was suspended as of June 29, 1956.  A hearing was had before the Industrial Accident Commission on the petition for review on November 5, 1956 with a continued hearing on May 14, 1957.  The employee did not testify at either hearing.  The Commission found:

> "After consideration of the evidence before us we conclude that complaints and symptoms existing when compensation ceased were not due to the accident and having so concluded it follows that if actual incapacity for work existed at that time it was not attributable to the accident and was not the responsibility of this employer.

We find that compensation was properly suspended on June 29, 1956."

The evidence submitted for the Commission's consideration was wholly on the part of the petitioner and consisted of the evidence of two doctors. A decision of a Commissioner of the Industrial Accident Commission on questions of fact is final in the absence of fraud, Chap. 31, Sec. 37, R. S. 1954. *Prescott vs. Old Town Furniture Co.*, 151 Me. 11. Although the Commission is made the trier of facts and its findings are final, it must in arriving at its conclusions be guided by legal principles. *Robitaille's Case*, 140 Me. 121, at page 125:

"The Commission, by the Act, is made the trier of facts and its findings thereof, whether for or against the claimant, are final; but in arriving at its conclusions it must be guided by legal principles. Failing in this it commits error of law and it is the function of the Court to correct such error. For this purpose the Court will examine the evidence set forth in the record.

A finding for the moving party must be founded upon some competent evidence. Mailman's Case, 118 Me., 172, 106 A., 606. But it must be wholly upon such evidence. If the finding is founded in whole or in part upon incompetent or illegal evidence error has been committed and the finding will not be sustained. Gauthier's Case, 120 Me., 73, 113 A., 28; Hinckley's Case, 136 Me., 403, 11 A. (2d), 485. If there is any evidence in support of such finding it cannot be set aside. Simmons's Case, 117 Me., 175, 103 A., 68; Westman's Case, supra and Mailman's Case, supra. The sufficiency of the evidence will not be passed upon, but it must be competent and have probative force. Williams' Case, 122 Me. 477, 120 A., 620; Adams' Case, 124 Me., 295, 128 A., 191; * * *."

See *Mailman's Case*, 118 Me. 172.

It becomes necessary for a study and an analysis of the record to determine if the findings of the Commissioner

should be disturbed. The nature of the employee's injury which occasioned the disability is characterized as "cut top of head." The only testimony in the case was furnished by two doctors, one admittedly having the qualifications of a neurosurgeon and the other those of a practicing physician and surgeon. Dr. Bidwell, the neurosurgeon, examined the employee on June 6, 1956 about two months after the injury was sustained. The employee at that time was complaining of a headache and in the course of the doctor's examination and as a part of the case history he received some information regarding a head injury some five years previous. Many of the recited symptoms were of a subjective nature. Dr. Bidwell made such an examination of the employee as he felt was necessary upon which to base his opinion. His opinion is reported as follows:

"Q. Now then, your conclusion. Did you arrive at a conclusion as to whether he had any symptoms that could be due to any injury? A. I felt that there were not.

Q. No organic signs or symptoms of injury. What diagnosis did you make? A. Psychoneurosis."

Dr. Irwin, a practicing physician and surgeon, testified that he first examined the appellant on January 15, 1952 for an injury to the back of his head and again in February of 1952 concerning the same head injury. The employee was examined by Dr. Irwin in August of 1956 for the injury of April, 1956. The employee gave the doctor a history of the case and explained to him his physical feelings. Dr. Irwin made an examination of the employee and concluded the man was not incapacitated as a result of the injury. His findings appear in the record in the following phraseology:

"A. The neurologic examination was entirely normal. It was my impression at that time that there was no objective evidence of organic,

neurological disease. The following comment was entered in my record on the completion of this examination:

'I am unable to make out any objective evidence of organic neurological disease. I can find no reason for his alleged disability and have advised the patient to return to work. The question of hospitalization has come up but I do not believe that any additional information would be obtained by hospitalization. Actually, such hospitalization might be detrimental to the patient at the present time. I have no specific suggestions for his care.'

Q. You thought he was able to go to work at that time?

A. From the neurologic, organic standpoint, I could see no evidence of disability."

The testimony of the two doctors stands on the record uncontradicted. The witnesses were submitted to rigorous cross-examination by counsel for the employee with no effect on their conclusions that the employee was not suffering disability as a result of the injuries sustained April 20, 1956.

The parties saw fit to enter into an agreement as provided by Sec. 32 of Chap. 31 of R. S. 1954 and thereby established payment of compensation. The employer, on July 6, 1956, having considered that incapacity had ended, petitioned for a ruling to that effect. This was the proper procedure under Sec. 38 of the Act. *Newell's Case,* 121 Me. 504. The issue on the petition for review based on the agreement is whether since the execution and approval of the agreement the incapacity has increased, diminished or ended. *Crowley's Case,* 130 Me. 1.

The unrefuted and uncontradicted testimony of Drs. Bidwell and Irwin definitely establishes the fact that the incapacity of the employee as a result of the injury sustained on April 20, 1956 was at an end. The record discloses that

there was admissible and substantial evidence upon which the Commissioner based his findings of fact.

*Appeal dismissed.*

*Decree affirmed.*