## HELEN B. MAILMAN'S CASE.

### Androscoggin.    Opinion May 27, 1919.

*Revised Statutes, Chap. 50, Sec. 34, interpreted.    Burden of proof in claims arising
under Workman's Compensation Act.    Necessary elements to be proven.    General
rule as to admissibility of statements made by deceased or injured person as to the
manner of receiving the injuries.    Rule as to admissibility of statements show-
ing physical condition.    Findings of fact by Chairman of Industrial Acci-
dent Commission as compared with findings of fact by Justice in equity
proceedings.    Rule as to invoking fraud to defeat commissioner's find-
ings of facts.    Rule where the natural and reasonable inference from
the facts proven is that the accident happened while the deceased
was engaged in his employment and employer disputes same
upon whom is the burden of proof.    Rule as to employee
dying at his post of duty being presumed to be at
the time of his death in the performance of
his duty and engaged in the work
for which he was employed.*

Proceeding under the Workman's Compensation Act.

William Mailman, a night watchman in a foundry, began work as usual on the
evening of April 18, 1917.    The following morning he was discovered at the
foundry in a state of collapse.    To the man who found him he exclaimed "I got
hurt."    The Chairman of the Industrial Accident Commission permitted the
introduction of testimony showing that Mailman afterward told that and how
he was accidentally injured while doing his work at the foundry during the night.
The Chairman, however, in his decree certifies that in making his finding of fact
he wholly disregarded this hearsay evidence.

Mailman developed peritonitis and pneumonia and died on April 27, 1917.

It was contended and, on the other hand, denied that Mr. Mailman's pneumonia
was traumatic, i. e., that it was superinduced by trauma, or injury.    There was
testimony that a red mark was found on his chest which turned black when
blood poisoning set in.    There was some medical testimony to the effect that
the sequence of symptoms was more consistent with traumatic pneumonia than
with illness otherwise caused.

The Chairman found Mailman's fatal illness was traumatic and that it was the
result of an accident arising out of and in the course of his employment by the
defendant and made an award to the dependent widow.

From a formal decree of a single Justice in accordance with the Chairman's finding the case comes up on appeal.

*Held:*

In the hearing before the Commission the plaintiff has the burden of proof. To sustain the decree it must appear that there was produced at the trial of facts competent legal evidence of three things, to wit: that the deceased died, or was disabled, as the result of (1) an accident arising (2) out of, and (3) in the course of his employment by the defendant.

In the absence of fraud the Chairman of the Industrial Accident Commission is under the statute final Judge of the facts. When the evidence is direct the court will not review the Commissioner's finding in respect to the credibility and weight of testimony.

The decree of the Commissioner is analogous to a finding of a Judge who by consent determines facts or (as indeed it is) an award by a referee agreed upon by the parties: That such a finding or award cannot be impeached by showing errors of judgment, however gross, as to the weight and credibility of testimony, is settled by so many authorities that citation is unnecessary.

In a case proved wholly, or in part, circumstantially, where there is a dispute as to what the circumstances are, the determination of such dispute by the Commissioner is final. It is for the trier of facts, who sees and hears witnesses, to weigh their testimony and without appeal to determine their trustworthiness.

When the evidence is circumstantial and a state of facts is shown more consistent with the Commissioner's finding than with any other theory and the finding is supported by rational and natural inferences from facts proved or admitted, an appeal cannot be sustained.

The Workman's Compensation law is not violative of the Constitution in respect to the method by it provided for the exclusive determination of issues of fact. Being elective it does not deny or abridge the right of jury trial.

The admission by the Commissioner of plainly incompetent hearsay testimony does not require the court to disturb the decree unless such decree was in whole, or in part, based on such inadmissible testimony.

The spontaneous exclamation of the helpless man "I got hurt" was properly admitted. But only as tending to show the physical condition of the deceased at the time.

Evidence was produced both in support of and in denial of the proposition that Mailman's illness was traumatic, i. e., caused by injury. The weight and credibility of this testimony was entirely for the Commissioner.

The Chairman found and determined that Mailman's fatal illness was traumatic and was due to an accident arising out of and in the course of his employment by the Record Foundry & Machine Company. This inference is not unnatural or irrational and is more consistent with the proved or admitted facts than is any other theory.

Appeal from the decision of the Chairman of the Industrial Accident Commission. Judgment in accordance with opinion.

Case stated in opinion.

*McGillicuddy & Morey*, for claimant.

*Andrews & Nelson*, for respondents.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, WILSON, DEASY, JJ.

DEASY, J. Proceeding under The Workman's Compensation Act. Helen B. Mailman, widow and dependent of William Mailman, alleges that her husband died from an "accident arising out of and in the course of his employment" by the Record Foundry and Machine Company.

William Mailman, a night watchman, went to work as usual on April 18, 1917. The following morning he was discovered at the foundry in a state of collapse. He developed pneumonia and peritonitis and after a few days died. His dependent claimed that his pneumonia was traumatic, i. e., the result of an injury and that the injury was due to an accident sustained by the deceased while alone at the foundry on the night of the 18th. The chairman of the Industrial Accident Commission found in favor of the dependent. From the formal decree of a single Justice rendered in accordance with such finding the defendants appeal. To avoid confusion we shall refer to the dependent as the plaintiff.

JURISDICTION.

"His (chairman of Industrial Accident Commission) decision in the absence of fraud upon all questions of fact shall be final. . . . . Such decree (decree of single justice in accordance with finding of chairman) shall have the same effect and all proceedings in relation thereto shall thereafter be the same as though rendered in a suit in equity duly heard and determined by said court, except there shall be no appeal therefrom upon questions of fact found by said commission or its chairman." R. S., Chap. 50, Sec. 34.

In the absence of fraud this court is precluded by positive law from acting as a trier of facts. It does not review the facts. Another tribunal has final jurisdiction for this purpose. The Supreme Judicial

Court finally determines questions of law. For this purpose its members, or a majority of them, sit as a court of law. It possesses this power whether sitting as a court of common law or of equity, or to decide probate appeals, or appeals from quasi judicial tribunals like the Industrial Accident Commission. The constitution does not and the legislature cannot abridge this power.

But it does not in all cases finally determine questions of fact.

In equity causes the court sitting in banc speaks the final word both as to law and fact. So in actions at common law reported by consent of parties. But in other common law causes, with immaterial exceptions, the constitution guarantees trials of fact by a jury; in probate appeals under a system sanctioned by long usage and repeated decisions, a single Judge passes finally on facts and in causes arising under The Workman's Compensation Act the chairman of the Industrial Accident Commission is by statute made the trier of facts and his decrees are, in the absence of fraud, final.

The constitutionality of a law vesting such a power in a tribunal not a court with a jury and which is partly and perhaps primarily administrative has been questioned.

The Maine Workman's Compensation Act is elective. No employer or employee is bound to submit to it without his assent, actively or passively manifested. Substantially similar statutory provisions have been upheld generally by courts. *State* v. *Creamer*, (Ohio) 97 N. E., 602; *Cunningham* v. *N. W. Imp. Co.*, (Mont.), 119 Pac., 554; *Borgnis* v. *Falk Co.*, (Wis.), 133 N. W., 209; *Hawkins* v. *Bleakley*, 243 U. S., 210, 61 L. Ed., 678; *Sexton* v. *Newark Co.*, (N. J.), 86 At., 451; *Hunter* v. *Colfax Consol. Coal Co.*, (Iowa), 154 N. W., 1037, 157 N. W., 145; *Young* v. *Duncan*, 218 Mass., 346; *Deibeikes* v. *Link-Belt Co.*, (Ill.), 104 N. E., 211; *Sayles* v. *Foley*, (R. I.), 96 At., 340. For reasons which are in these cases mobilized in compelling force, we hold that the Maine Compensation Act is not violative of the constitution in respect to the method by it provided for the exclusive determination of issues of fact.

BURDEN OF PROOF.

In the hearing before the Commission the plaintiff has the burden of proof. *Von Ette's Case*, 223 Mass., 59. *Sanderson's Case*, 224 Mass., 562.

For this reason a finding in favor of the plaintiff of any essential fact without proper evidence is an error of law. To sustain the decree it must appear that there was produced at the trial of facts competent legal evidence of three things, to wit, that the deceased died or was disabled as the result of (1) an accident arising (2) out of and (3) in the course of his employment by the defendant. R. S., Chap. 50, Sec. 11.

## QUESTIONS OF LAW INVOLVED.

The defendants contend that the Commissioner fell into errors of law in the following respects: (1) That he admitted incompetent, to wit, hearsay, testimony and based his decree wholly or partly upon it, and (2) that he made his decree in favor of the plaintiff with no competent evidence supporting certain essentials of her case.

## HEARSAY TESTIMONY.

The commissioner permitted witnesses to rehearse the story of the accident as told by the deceased. This was hearsay testimony, plainly inadmissible. But the allowance of hearsay evidence by the commissioner does not require this court to reverse his decree unless such decree was in whole, or in part, based upon such incompetent testimony. *Pigeon's Case*, 216 Mass., 55; *Derinza's Case*, 229 Mass., 444; *Reck* v. *Whittlesberger* (Mich.), 148 N. W., 249; *Kinney* v. *Cadillac Motor Co.*, 199 Mich., 435, 165 N. W., 651.

Were the court convinced that hearsay influenced the decree it would be required to sustain the appeal. We perceive, however, no sufficient reason for questioning the commissioner's statement that he made his finding of fact "wholly disregarding the hearsay evidence."

The commissioner permitted the introduction of testimony that when the deceased was discovered on the morning of April 19th, 1917, he said "I got hurt" and then or afterward indicated where he was hurt. Counsel for plaintiff urges that this testimony was admissible as a part of the res gestae. This contention is sound. It is admissible but only as tending to show the physical condition of the deceased at the time.

If the man had been groaning or screaming no law would forbid proof of such fact. The rule remains the same where pain finds

articulate expression.  *Heald* v. *Thing*, 45 Maine, 394; *Hutchins* v. *Ford*, 82 Maine, 378; *Barber* v. *Merriam*, 11 Allen, 322.

But the effect of this testimony is limited by its purpose.  It must be treated as an expression of present condition and not as an abbreviated narrative of an occurrence in even the immediate past.  *Asbury Insurance Co.* v. *Warren*, 66 Maine, 529; *Gosser* v. *Ohio Valley Water Co.* (Pa.), 90 At., 540; *Peoria Cordage Co.* v. *Ind. Board* (Ill.), 119 N. E., 996; Boyd on Workman's Compensation, 1123; Bradbury on Workman's Compensation, 2nd Ed., 800.

## EVIDENCE REQUIRED TO SUPPORT DECREE.

There must be some competent evidence.  It may be "slender." It must be evidence, however, and not speculation, surmise, or conjecture.  *Von Ette's Case*, 223 Mass., 60. . *Sponatski's Case*, 220 Mass., 528.  While no general rule can be established applicable to all cases, certain principles are clear:

If there is direct testimony which, standing alone and uncontradicted, would justify the decree there is some evidence, notwithstanding its contradiction by other evidence of much greater weight.

If the case must be proved wholly or in part circumstantially and there is a dispute as to what the circumstances are the determination of such dispute by the commissioner is final.   It is for the trier of facts who sees and hears witnesses to weigh their testimony and without appeal to determine their trustworthiness.

But the inferences which the commissioner draws from proved or admitted circumstances must needs be weighed and tested by this court.   Otherwise it cannot determine whether the decree is based on evidence or conjecture.

In other words, the court will review the commissioner's reasoning but will not, in the absence of fraud, review his findings as to the credibility and weight of testimony.

"In cases of this class the Supreme Court is not authorized to determine the preponderance or weight of testimony."  *Nevich* v. *Delaware L. & W. R. Co.* (N. J.), 100 At., 234.

"On a review of the findings of the Industrial Board the court does not pass on the weight of the evidence as to controverted facts." *Albaugh-Dover Co.* v. *Ind. Board* (Ill.), 115 N. E., 834.

"Its conclusion (the commission's conclusion in matters of fact) is not subject to review by the courts, unless palpably contrary to the undisputed evidence." *Frankfort Ins. Co.* v. *Pillsbury*, (Cal.), 159 Pac., 150:

"We have said so often, the real question is whether there is evidence in the record to support the finding and that we are not concerned with the weight of evidence that we shall not discuss the matter." *Onizi* v. *Studebaker Corp.* (Mich.), 163 N. W., 23. See also: *Drtina* v. *Charles Tea Co.*, (Ill.), 118 N. E., 69; *Larke* v. *Ins. Co.*, (Conn.), 97 At., 320; *Linsteadt* v. *Lumber Co.* (Mich.), 157 N.W. 64; *Bell* v. *Hayes Ionia Co.*, (Mich), 158 N. W., 179; *Commonwealth Edison Co.* v. *Industrial Board* (Ill.), 115 N. E., 158; *Interstate Co.* v. *Szot* (Ind.), 115 N. E., 599; *Lefens* v. *Ind. Comm.*, (Ill.), 121 N. E., 182; *Bergstrom* v. *Ind. Comm.*, (Ill.), 121 N. E., 195; *Schanning* v. *Standard Co.*, (Mich.),. 169 N. W. 879; *Poluskiewicz* v. *Philadelphia Co.*, (Pa.), 101 At., 638; *Davis* v. *Smith*, (Pa.), 105 At., 559; *Fitzgibbons Case*, (Mass.), 119 N. E., 1020; *Ginsberg* v. *Burroughs*, (Mich.), 170 N. W., 15.

The Massachusetts court seems to claim a larger power of review over decrees of the Industrial Accident Commission.

"It (the court) has jurisdiction over the case in the same way and to the same extent that it has, for example, in a suit in equity where the facts have been found by a master." *Brown's Case*, 228 Mass., 38.

But no law makes a master's finding final in the absence of fraud. While the report of a master "has every reasonable presumption in its favor" (*Dean* v. *Emerson*, 102 Mass., 482) it may be set aside if the court, upon weighing the evidence, deems such report clearly wrong. But this is to finally judge the facts. As a court of chancery the court has and exercises this power. Under The Workman's Compensation Act it has, in the absence of fraud, no jurisdiction to decide questions of fact.

Other cases hold that,

"The finding (of the Industrial Accident Commission) stands upon the same footing as the finding of a judge or the verdict of a jury." *Pigeon's Case*, 216 Mass., 52; *Diaz's Case*, 217 Mass., 36; *McCarthy's Case* (Mass.), 120 N. E., 852; *Simmon's Case*, (117 Maine), 103 Atl., 68.

This statement is not entirely accurate. A jury verdict may be set aside if the court finds it influenced by sympathy, passion or prejudice, or manifestly against the weight of evidence. But under the explicit language of the Workman's Compensation Act fraud and fraud only can be invoked to defeat a Commission's finding of facts.

The decree of the commissioner is indeed analogous to a finding of a judge who by consent determines facts or (as indeed it is) an award by a referee agreed upon by the parties. That such a finding or award cannot be impeached by showing errors of judgment, however gross, as to the weight and credibility of testimony, is settled by so many authorities that citation is unnecessary.

In any event, the weight and credibility of testimony must be finally determined by finite and fallible men. By assenting to the act the parties under sanction of statute have selected for this purpose The Industrial Accident Commission. With this selection we have no right to interfere.

In cases wherein the evidence is circumstantial and not direct the line between inference and conjecture is sometimes obscure. The Massachusetts court has said:

"The dependent must go further than simply to show a state of facts which is equally consistent with no right to compensation as it is with such right." *Sponatski's Case*, 220 Mass., 528; *Sanderson's Case*, 224 Mass., 562.

If, however, a state of facts is shown more consistent with the commissioner's finding than with any other theory and the finding is supported by rational and natural inferences from facts proved or admitted an appeal cannot be sustained. *Papinaw* v. *Railway Co.*, 189 Mich., 441, 155 N. W., 545; In re *Myers* (Ind.), 116 N. E., 314.

EVIDENCE OF ACCIDENT.

The defendants deny that the illness and death of Mailman was due to an injury, accidental or otherwise. They argue that when he began work on the evening of April 18th he was "coming down" with pneumonia. This is disputed. If true it is not decisive. Evidence that an existing disorder reaches the point of disablement during employment, of course does not prove accidental or other injury arising out of such employment. It is sufficient, however, (assuming other elements proved) if by weakening resistance or otherwise an

accident so influences the progress of an existing disease as to cause death or disablement. *Voorhees* v. *Smith*, (N. J.), 92 At., 280; *Trodden* v. *McLennard*, 4 B. W. C. C., 190; *Doughten* v. *Hickman*, 6 B. W. C. C., 77; *Puritan* v. *Wolfe*, (Ind.), 120 N. E., 417.

In a recent Michigan case the point is clearly stated:

"The testimony cannot be harmonized. We find ground for saying that the board had before it some evidence tending to prove that the fall which Mr. Gaffney had, set up a train of physical disturbances, affecting an existing pathological condition in such way as to cause his death. We therefore decline to set aside the award." *Gaffney* v. *Goodwillie*, (Mich.), 169 N. W., 849.

In the case before us was the disease caused by or was its fatal result due to trauma or injury? If this court had been the trier of facts it might have decided this issue in favor of the defendant. But the commissioner found the issue for the plaintiff. Is this finding sustained by any competent testimony?

There is some evidence that upon the body of the deceased a mark, or marks, were observed which turned black when blood poisoning set in. There is some medical testimony to the effect that the symptoms were more consistent with traumatic pneumonia than with illness otherwise caused. The spontaneous exclamation of the suffering man "I got hurt," clearly admissible for this purpose, shows that what he sensed and felt was the shock of a hurt rather than the prostration of illness. In view of these circumstances it cannot be reasonably said that there was no evidence that the illness of the deceased was traumatic.

There being no evidence, suggestion or presumption that any injury sustained by the deceased was occasioned by his willful intention or that it resulted from his intoxication while on duty, we think it is an almost necessary inference that if he were injured the injury was accidental.

EVIDENCE THAT THE INJURY AROSE OUT OF AND IN THE COURSE OF THE EMPLOYMENT.

Both of these elements must appear. The accident must have arisen out of and in the course of the employment. In other words, it must have been due to a risk to which the deceased was exposed while employed and because employed by the defendant. There is

evidence that Mailman on the night of the 18th was in good health. He was left performing his duties at the foundry "laughing and joshing." The following morning he was found, still at his post of duty, stricken and helpless. The deceased might have left the foundry in the night in pursuit of his own affairs, received an injury and found his way back. He might have been injured in the foundry while doing something for his own personal pleasure, entirely independent of his employment. These unsupported hypotheses are so improbable as to be almost negligible. From all the circumstances the commissioner drew the inference that Mailman's injury was received while employed at the defendant's foundry and arose out of such employment. This inference is neither unnatural nor irrational.

The authorities with substantial uniformity support this conclusion.

"If in such a case facts are proved the natural and reasonable inference from which is that the accident happened while the deceased was engaged in his employment, I think it falls on the employer, if he disputes the claim, to prove that the contrary was the case." *Papinaw* v. *Grand Trunk etc. Co.*, (Mich.), 155 N. W., 577. *Wishcallis* v. *Hammond*, (Mich.), 166 N. W., 995.

"If there are facts and circumstances proven in the case from which the essential ultimate facts may reasonably be inferred and the court or board whose duty it is to pass upon such facts has drawn therefrom the essential ultimate facts this court will not disturb such finding, though other and different facts might be inferred therefrom by other minds, equally as fair and reasonable." *Binel, etc., Co.* v. *Loper*, (Ind.), 117 N. E., 527.

"When the employee dies at his post of duty a presumption may reasonably be entertained that he was then performing his duty and engaged in the work for which he was employed, from which a causal relation between his employment and the accident may be inferred." *Hills* v. *Blair*, 182 Mich., 22-28, 148 N. W., 243.

In the following cases the cause and character of the accident were shown solely or chiefly by circumstances below outlined. In each case the trier of facts awarded compensation to the dependent. In every case the finding was upheld.

A butcher's canvasser was in the habit of riding a bicycle on his rounds and came back one day lame, covered with mud and in pain. *Haward* v. *Rowsell & Matthews*, 7 Butterworth's Compensation Cases, 552 (Eng. cases).

The employment of a collier was such that scratches were often caused on his arms or legs. He went to work perfectly sound in the morning and later required help with his work (which was unusual), limped and rubbed his knee and was later found to have an abraded knee and eventually died from septic poisoning. *Hayward* v. *Westleigh Colliery Company*, 8 B. W. C. C., 278.

A mason's laborer sustained an abrasion on the thumb of the hand which held the chisel. Two weeks later an abscess appeared in the arm pit and the man died. The circumstances were consistent with the entry of a microbe into his thumb causing blood poisoning on the day of the accident. *Fleet* v. *Johnson & Sons*, 6 B. W. C. C., 60.

A repairer beginning work at a colliery in the evening uninjured went home next morning with one of his fingers crushed and finally died of blood poisoning. *Mitchell* v. *Glamorgan Coal Co.*, 9 B. W. C. C. 16.

A man in good health, working in the hold of a ship, came up out of the hold in great pain, went home where it was found he had marks on his ribs. He died of pneumonia. *Lovelady* v. *Berrie*, 2 B. W. C. C. 62.

Deceased, an elevator man in a factory, disappeared. His body was found in elevator pit. *Wishcalles* v. *Hammond*, (Mich.), 166 N. W., 993.

Geo. C. Von Ette was a compositor. He went out on a roof adjoining the composing room. Workmen were accustomed to go upon this roof for fresh air, though there was an obsolete office rule against it. In some unexplained way he fell from the roof and was killed. *Von Ette's Case*, 223 Mass., 56.

Deceased was section foreman. He went in the evening to mail his report. Sometime afterward his mangled body was found on the railroad track over which he had to pass on his return. *Papinaw* v. *Grand Trunk Railway Co.*, (Mich.), 155 N. W., 545.

Decedent was employed in an automobile factory. Shortly before quitting time he came to the foreman and exhibited his left thumb which had been injured. The foreman sent him to the Company's doctor. His thumb having been bandaged he went home. Blood poisoning followed and he died. No testimony of the doctor appears. *Kinney* v. *Cadillac Motor Car Co.*, 199 Mich., 435, 165 N. W., 651.

Deceased was a locomotive fireman. About one o'clock he went to the round house where his engine was. About two o'clock his dead

body was found on the cement floor of the round house beside the engine. The physician found that he died from concussion of the brain. *Meyers* v. *Michigan Central Railroad Co.*, (Mich.), 165 N. W., 703.

The decedent was night watchman in a warehouse on a water front. He began his duties at ten o'clock at night on November 12, 1914. In the mornng he had disappeared and has never becn seen since. There were indications of a struggle in the warehouse. Blood and the decedent's torn cap were found. There wcre marks where some heavy body had been dragged to the water. *Western, etc., Co.* v. *Pillsbury*, (Cal.), 159 Pac., 423.

Deceased was night watchman in a brewery. His duties consisted mainly in cleaning up after the day force had left and after midnight to turn on steam. Between eight and nine o'clock at night he was discovered unconscious in the brewery basement. He died the following morning. There was an abrasion on the back of his head and one shoulder was bruised. The finger nails of one of his hands were turned back. The evidence showed an opening in the floor through which he might have fallen. *Helleman Brewing Company* v. *Shaw*, (Wis.), 154 N. W., 631.

The learned counsel for the defendants in their able and exhaustive brief cite several Massachusetts cases. Upon examination some of these authorities will be found in harmony with our conclusion and others clearly distinguishable on facts. Even *Sanderson's Case*, 224 Mass., 562, upon which the defendants confidently rely is not in conflict. . . . In that case a driver fell from his wagon and died from cerebral hemorrhage. Whether the fall was the cause or the consequence of the hemorrhage was the dispute. The court held that the two hypotheses were equally consistent with the circumstances proved and that the selection of one supposition as the basis for a decree was mere conjecture. But in the case at bar we have held that a state of facts is shown more consistent with the commissioner's finding than with any other theory and that the finding is supported, not indeed by the only possible or even reasonable inference, but by inferences which are not unnatural and not irrational.

*Appeal denied.*
*Decree affirmed.*