William H. NORTON

v.

C.P. BLOUIN, INC., and Transportation Insurance Company, et al.

Supreme Judicial Court of Maine.

Argued May 6, 1986.

Decided June 25, 1986.

McTeague, Higbee, Libner, Reitman, MacAdam & Case, G. William Higbee, (orally), Brunswick, for plaintiff.

Hunt, Thompson & Bowie, James P. Bowie (orally), Portland, for C.P. Blouin.

Robinson, Kriger & McCallum, Frederick H. Greene, III (orally), Portland, for American Mut.

Norman & Hanson, William LaCasse (orally), Portland, for Bath Iron Works.

Richardson, Tyler & Troubh, Eve Cimmet, Portland, for New England Insulation.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, and SCOLNIK, JJ.

WATHEN, Justice.

The employee, William H. Norton, appeals from a decision of the Appellate Division of the Workers' Compensation Commission, reversing an award granted against the employer, C.P. Blouin, Inc. In awarding compensation, the single commissioner applied 39 M.R.S.A. § 194–B (Supp. 1985–1986) to Norton's claim for an asbestos-related disease. The Appellate Division found his claim to be controlled and barred by the provisions of 39 M.R.S.A. § 194–A (1978), a predecessor statute in effect at the time Norton became incapacitated. We conclude that section 194–B controls the claim and thus, we affirm the award granted by the single commissioner.

I.

Mr. Norton, a sheetmetal worker, was exposed to asbestos during much of his working life while employed by a number of different employers. He was employed by Bath Iron Works Corporation on three occasions between 1937 and 1957. He was twice employed by New England Insulation, Inc., between 1980 and 1983. On three occasions between 1981 and 1983 he worked for C.P. Blouin, Inc. It is alleged that each employment involved exposure to asbestos. Norton became incapacitated on March 23, 1983 from a combination of obstructive lung disease, caused by emphy-

sema and smoking, and restrictive lung disease caused by asbestos exposure. During 1983–1984 he filed four petitions for award-occupational disease against the three employers and four insurance carriers. The petitions were consolidated for hearing and decision. The commissioner granted the petition against C.P. Blouin, Inc. and Transportation Insurance Company after deciding that section 194–B governed Norton's claim. Because section 194–B(4) imposes liability only on the employer responsible for the last injurious exposure, who in this case the commissioner found to be Blouin, all other petitions were denied. The Appellate Division reversed and we granted the employee's petition for appellate review.

## II.

The principal question on appeal is whether section 194–B governs this case. The law became effective on September 23, 1983, after the petition was filed against Blouin but prior to hearing. Section 194–B states in relevant part:

§ 194–B. **Special provisions for asbestos-related diseases**

1. **Definition.** As used in this section, the term "asbestos-related disease" means a disease caused by exposure to asbestos.

2. **Scope.** This section applies only to asbestos-related diseases caused or contributed to by a last injurious exposure to asbestos which occurred on or after November 30, 1967. Except as otherwise provided in this section, all provisions of this chapter shall apply to these diseases.

3. **Aggravation of condition.** Section 185 shall not apply to asbestos-related diseases.

4. **Last employer liable; notice.** Notwithstanding section 186, the only employer and insurance carrier liable shall be the last employer in whose employment the employee was last injuriously exposed to asbestos, and the insurance carrier, if any, on the risk when the employee was last so exposed under that employer. Notice of incapacity under section 187 shall include the name of that employer and the date when employment with that employer ceased.

5. **Disability or death under inadequate prior law.** In cases of asbestos-related disease resulting in incapacity or death prior to October 1, 1983, lateness in giving notice or filing a petition shall not be a bar to compensability, as provided in this section, unless the employer can show that his rights were substantially prejudiced by that failure. This subsection is repealed January 1, 1985.

6. **Compensation limit.** The 3-year limit provided in section 189 shall not apply to asbestos-related diseases.

Nothing in this section shall be construed to require retroactive payments of compensation for periods of incapacity which occurred prior to October 1, 1983, or retroactive payments of death benefits for periods of time prior to October 1, 1983. Compensation for claims permitted under this section shall be payable only for periods of incapacity occurring after October 1, 1983.

. . . .

8. **Compensation benefits.** Compensation under this section shall be paid as follows.

A. If an employee is determined to be entitled to compensation for periods of total incapacity occurring on or after October 1, 1983, or if a dependent of an employee is determined to be entitled to full death benefits for periods occurring on or after October 1, 1983, and the employee became incapacitated or died on or after November 30, 1967, and before January 1, 1972, then the weekly compensation paid shall be equal to ⅔ of the average weekly wage in the State, as computed by the Bureau of Employment Security, that exists on the date the worker files his claim for compensation.

. . .

B. If an employee is determined to be entitled to compensation for periods of

total or partial incapacity occurring on or after October 1, 1983, or if a dependent of an employee is determined to be entitled to full or partial death benefits for periods occurring on or after October 1, 1983, and the employee became incapacitated or died on or after January 1, 1972, and before October 1, 1983, then the initial weekly compensation paid shall be equal to the compensation that would have been paid had compensation payments begun at the time the employee became incapacitated or died and that compensation had been adjusted annually as provided in former sections 54, 55 and 58, whichever section is applicable. ...

....

**9. Section not applicable.** This section shall not apply to an asbestos-related disease of any worker who at the time of the last injurious exposure to asbestos was covered by the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, c. 509, United States Code, Title 33, Section 901, or the Federal Employees Compensation Act, United States Code, Title 5, Section 8101. A worker shall be considered to be covered by one of those acts if, at the time of his last injurious exposure to asbestos, he was an employee, as therein defined, and was employed in employment which is subject to either of those acts.

The enactment of section 194–B coincided with the repeal of section 194–A, P.L. 1983, ch. 428, §§ 1–2, and implements the following changes in prior law. First, the repeal of section 194–A removed a presumption against the existence of disability due to asbestosis if the employee had not been exposed to asbestos for a period of two out of the preceding 15 years.[1] Second, section 194–B(4) changed the assignment of liability in multiple employer situations from the last employer responsible for an injurious exposure exceeding 60 days to the last employer responsible for any injurious exposure.[2] Third, section 194–B(3) removed from asbestos cases the requirement that incapacity be apportioned between work-related and non-work-related disease and compensation reduced accordingly.[3] Fourth, section 194–B(5) relaxed the notice requirements of the Workers' Compensation Act, making late notice inconsequential absent a showing by the employer that it suffered substantial prejudice.[4] Finally,

1. Section 194–A stated:
 In the absence of evidence in favor of the claim, disability or death from asbestosis shall be presumed not to be due to the nature of any occupation, unless during the 15 years immediately preceding the date of disability the employee has been exposed to the inhalation of asbestos dust over a period of not less than 2 years. If the employee shall have been employed by the same employer during the whole of such 2-year period, his right to compensation against such employer shall not be affected by the fact that he had been employed during any part of such period outside of this State.

2. The 60 day requirement derived from 39 M.R.S.A. § 186 (1978), which states in relevant part:
 The only employer and insurance carrier liable shall be the last employer in whose employment the employee was last injuriously exposed to the hazards of the disease during a period of 60 days or more, and the insurance carrier, if any, on the risk when the employee was last so exposed, under such employer.

3. The provision for apportionment and reduction of compensation appears in 39 M.R.S.A. § 185 (1978), which states:

 Where an occupational disease is aggravated by any other disease or infirmity, not itself compensable, or the death or incapacity from any other cause, not itself compensable is aggravated, prolonged, accelerated or in anywise contributed to by an occupational disease, the compensation payable shall be reduced and limited to such proportion only of the compensation that would be payable if the occupational disease were the sole cause of the incapacity or death as such occupational disease, as a causative factor, bears to all the causes of such incapacity or death, such reduction in compensation to be effected by reducing the number of weekly or monthly payments or the amounts of such payments, as under the circumstances of the particular case may be for the best interest of the claimant or claimants.

4. The general notice provision is found in 39 M.R.S.A. § 63 (1978). Prior to the enactment of section 194–B, that notice provision applied to occupational diseases by virtue of section 186.

section 194–B(6) makes the 3-year statute of limitations set forth in 39 M.R.S.A. § 189 (1978) inapplicable to asbestos related diseases.

In reaching contradictory results the single commissioner and the Appellate Division employed differing analytic approaches on the question of retrospective application. The commissioner viewed the case as presenting an initial question whether section 194–B is procedural or substantive. If procedural, the statute applies to all pending cases and such application is, by definition, prospective rather than retrospective. *See Dobson v. Quinn Freight Lines, Inc.*, 415 A.2d 814, 816 (Me.1980). The single commissioner found section 194–B to be procedural and did not analyze legislative intent or constitutional limitations on retrospective legislation.

The Appellate Division rejected the definitional analysis of *Dobson* and viewed the question strictly as one of legislative intent and constitutional limitation, citing *Langley v. Home Indemnity Co.*, 272 A.2d 740 (Me.1971) for the proposition that mere labels should not determine the question of retrospective application. The Division panel found no clear expression of legislative intent to support an application of section 194–B to claims involving the onset of incapacity prior to that section's effective date.

We acknowledge that the opinions of this Court, written over a period of years, admit of divergent analytic approaches on the question of retroactive application of statutes.[5] In the present case, however, we consider two questions to be dispositive.

**5.** We have previously held that when a statute is purely procedural or remedial in nature, application of that statute to matters pending at the time of its enactment, even though the events giving rise to the proceedings occurred prior to the statute's effective date, constitutes a prospective rather than a retroactive application. *Merrill v. Eastland Woolen Mills, Inc.*, 430 A.2d 557, 560–61 (Me.1981); *Dobson v. Quinn Freight Lines, Inc.*, 415 A.2d 814, 816 (Me.1980). When a statute effects a substantive change, its application remains prospective if it governs operative events that occurred after its effective date, even though the entire state of affairs includes events pre-dating the statute's enactment. *Director of Bureau of Labor Standards v. Fort Halifax Packing Co.*, 510 A.2d 1054, 1063 (Me. 1986), *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 943–44 (Me.1982). A substantive statute, however, will not be applied to operative events arising before its effective date unless accompanied by a clear expression of legislative intent favoring such a retroactive application. *Terry v. St. Regis Paper Co.*, 459 A.2d 1106, 1108–09 (Me.1983); *Coates v. Maine Employment Security Commission*, 406 A.2d 94, 96–97 (Me.1979). If the Legislature intends a retroactive application, the statute must be so applied unless the Legislature is prohibited from regulating conduct in the intended manner, and such a limitation upon the Legislature's power can only arise from the United States Constitution or the Maine Constitution.

The confusion in this area stems from statements in our prior cases that are inconsistent with the principles set forth above. First, an early decision required a clear expression of legislative intent favoring retroactive application in a case in which the Court had already determined the statutory change to be procedural. *Miller v. Fallon*, 134 Me. 145, 147–48, 183 A. 416, 417 (1936). Second, on occasion we have stated that retroactive application of a statute is unconstitutional if it "impairs vested rights or imposes liabilities," without identifying the source of the asserted constitutional prohibition. *Merrill v. Eastland Woolen Mills, Inc.*, 430 A.2d at 560 n. 7; *Miller v. Fallon,* 134 Me. at 147, 183 A. at 417. Finally, the confusion has been aggravated because the test set forth for identifying an unconstitutional retroactive application has mirrored the standard articulated for determining whether a statute is procedural or substantive. *Compare Merrill v. Eastland Woolen Mills, Inc.*, 430 A.2d at 560 n. 7 (retroactive legislation unconstitutional if it "impairs vested rights or imposes liabilities") *with Dobson v. Quinn Freight Lines, Inc.*, 415 A.2d at 816 (legislation procedural because it "does not revive an extinguished right or deprive anyone of vested rights).

We reaffirm that the application of a procedural statute to pending matters is not a retroactive application. If the statute effects a substantive change, that is, if it determines the legal significance of operative events occurring prior to its effective date by impairing rights or creating liabilities, the statute will govern matters arising before its effective date only if legislative intent favoring such a retroactive application is clearly expressed or necessarily implied. If the Legislature intends for a statute to apply retroactively, however, the statute will be so applied unless a specific provision of the state or federal constitution is demonstrated to prohibit such action by the Legislature.

First, did the Legislature intend that section 194–B apply where the onset of incapacity occurred prior to the effective date of the statute; and, second, whether such an application is permissible under the Contract Clause of the Maine Constitution?[6] We answer both questions in the affirmative.

■ The harmful results of exposure to asbestos are not immediate. Frequently, a number of years pass between injurious exposure and the diagnosis of disease. In enacting section 194–B, the Legislature sought to remove the barriers that existed under the prior law and effectively precluded recovery for any disease process involving a lengthy latency period. The statute expressly addresses two classes of claims; those in which the onset of incapacity or death occurs after October 1, 1983, and those in which the onset of incapacity or death occurred on or after November 30, 1967 but before October 1, 1983. With regard to the latter class of claims, subsection 5 relaxes the notice provision and subsection 8 designates the level of compensation payments for incapacity occurring after October 1, 1983, dependent upon whether incapacity began between 1967 and 1972 or between 1972 and 1983. The express language of the statute clearly reveals the Legislature's intent that the substantive provisions of section 194–B apply retroactively to cases involving the onset of incapacity before the effective date of the statute. Although the statute provides compensation only for that period of incapacity occurring after October 1, 1983, the Legislature explicitly mandated that the statute would apply where incapacity arose "under inadequate prior law." 39 M.R.S.A. § 194–B(5).

■ Blouin argues that even if section 194–B was intended to have retroactive effect, the Legislature is constitutionally prohibited from changing "the obligations of an employer after the employment relationship has ended." Blouin does not contend that the statute violates the due process requirements of the Maine or United States Constitution,[7] but rather argues that, if applied retroactively, it would impermissibly impair contractual rights in violation of Me. Const. art. I, § 11.

The constitutional argument advanced by the employer is premised upon two early Maine cases. In 1919, this Court upheld the constitutionality of the adjudicative jur-

---

**6.** The single commissioner's conclusion that section 194–B affects only procedural changes in the law cannot be sustained. At minimum, section 194–B(3) increases Blouin's liability over what it would have been under prior law. That provision precludes any reduction in Norton's compensation for incapacity attributable to smoking and emphysema. *See* 39 M.R.S.A. § 185.

**7.** It is clear that no federal due process violation occurs simply because a statute creates liability based on events pre-dating its enactment. In *Usery v. Turner Elkorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), the Supreme Court reviewed a statute creating employer liability to sufferers of black lung disease who had left employment prior to the passage of the statute. In ruling the statute valid, the Court stated:

> [O]ur cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. This is true even though the effect of the legislation is to impose a new duty or liability based on past acts.

*Id.* at 16, 96 S.Ct. at 2892 (citations omitted). The Court went on to state that although the justifications for prospective legislation may not always suffice to support retroactive legislation, retroactive application is permitted so long as a rational and non-arbitrary basis exists for making the statute retrospective. *Id.* at 17–19, 96 S.Ct. at 2893–2894. In *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984), the Court reaffirmed that retroactive legislation need only address a legitimate legislative purpose by rational means to comport with the requirements of due process, explicitly rejecting a contention that retroactive legislation requires stricter scrutiny than is afforded by the rational relation test. *Id.* 104 S.Ct. at 2718, 2720.

Because Blouin raises no due process challenge, state or federal, we have no occasion to determine whether the Due Process Clause contained in the Maine Constitution limits retroactive legislation to any greater degree than does its federal counterpart.

isdiction of the Workers' Compensation Commission, stating that "[t]he Maine Workmen's Compensation Act is elective. No employer or employee is bound to submit to it without his assent, actively or passively manifested." *Mailman's Case,* 118 Me. 172, 175, 106 A. 606, 607 (1919). Two years later *Gauthier's Case,* 120 Me. 73, 113 A. 28 (1921), held that benefits under a law enacted in 1919 could not be awarded for an injury occurring in 1918. Citing *Mailman's Case,* this Court stated:

> Our Workmen's Compensation Law is elective. Rights and obligations under it are contractual.
>
> Upon the happening of an industrial accident the right to receive compensation becomes vested, and the obligation to pay is fixed. To change such vested rights and fixed obligations by statute would clearly be to impair the obligation of contracts.

*Id.* at 76, 113 A. at 30 (citation omitted).[8]

Blouin's argument ignores the fact that the Workers' Compensation Act is no longer elective, and thus, coverage under the Act is no longer a matter of contract. A 1973 amendment to the Act makes its provisions mandatory for all private employers. P.L. 1973, ch. 746 (currently codified at 39 M.R.S.A. §§ 2, 4, 21, 23, 24, 28, 104–A (1978)). At least as of 1973, the active or passive assent referred to in *Mailman* was no longer required, and the employer's obligation became one of general law rather than contract.[9] With this development, any claim of impairment of contract rights disappears. *See Bureau of Labor Standards v. Fort Halifax Packing Co.,* 510 A.2d 1054, 1062 (Me.1986).

We conclude that the Legislature intended that section 194–B apply to the facts of this case and reject Blouin's constitutional claim that vested contract rights have been violated.

### III.

Blouin challenges a number of the findings made by the commissioner in applying section 194–B. There is sufficient evidence in the record to support the finding that Norton was exposed to asbestos while in Blouin's employ. Further the record supports the finding that he has lung disease caused by asbestos and that such disease contributes to his current incapacity. Noting that the medical witnesses were unable to pinpoint any particular period of occupational exposure as causing Norton's incapacity, Blouin asserts that any exposure while in its employ has not been shown to be the legal cause of the injury.

Initially, Blouin seeks to transplant the requirement of legal causation, which applies to work-related injuries, *see Bryant v. Masters Machine Co.,* 444 A.2d 329 (Me. 1982), into the Occupational Disease Law. Section 182 of the Occupational Disease Law states that incapacity "resulting from an occupational disease, shall be treated as the happening of a personal injury arising out of and in the course of the employment" within the meaning of the Workers' Compensation Act. Section 183 defines occupational disease as "a disease which is due to causes and conditions which are characteristic of a particular trade, occupation, process or employment and which arises out of and in the course of employment." Section 186 states: "Where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease ... shall be liable therefor." Finally, section 194–B applies to "asbestos-related diseases caused or *contributed to* by a last injurious exposure to asbestos" occurring after Novem-

---

8. In *Reggep v. Lunder Shoe Products Co.,* 241 A.2d 802 (Me.1968), we cited *Gauthier* for the proposition that benefit levels are vested at the time of injury and we then proceeded to interpret the statute.

9. Because Norton's employment with Blouin occurred only after 1973, we have no occasion to consider whether an impairment of contract claim could be successfully asserted in the context of employment between 1967 and 1973.

ber 30, 1967. (emphasis added). To the extent applicable in the present context, legal cause is made out by the existence of an occupational disease, that is, one arising from risks or conditions peculiar to the workplace. The assignment of liability to the last injurious exposure reflects a legislative choice to allocate the burden of incapacity resulting from occupational disease. Given the latent nature of asbestosis, it is possible that in many cases, the last exposure, standing alone, may not be causing incapacity at the time of hearing. Nevertheless, the Legislature has chosen to place liability on the employer responsible for the "last injurious exposure."

▇ Finally, Blouin argues that Norton's exposure while in its employ has not been shown to be injurious. We construe that phrase "injurious exposure", to mean exposure to the same work-related hazards responsible for the employee's disease. Such a construction does not render superfluous the word "injurious." The exposure is injurious in the sense that it contributes to the disease process resulting from the cumulative effect of all exposures. On this record we affirm the commissioner's finding of injurious exposure.

The remaining issues raised on appeal require no discussion.

The entry is:

Decision of the Appellate Division vacated.

Judgment of the single commissioner affirmed.

It is ordered that the employer pay to the employee $550 for his counsel fees plus his reasonable out-of-pocket expenses for this appeal.

All concurring.