**Mark A. TOMPKINS**

v.

**WADE & SEARWAY CONSTRUCTION CORP. et al.**

Supreme Judicial Court of Maine.

Argued May 14, 1992.
Decided Sept. 4, 1992.

Patrick McTeague, Wayne Whitney (orally), McTeague, Higbee, Libner, MacAdam, Case & Watson, Topsham, for employee.

Donald Fontaine, Jonathan S.R. Beal, Fontaine & Beal, Portland, amicus curiae, for Bakery and Confectioners and Tobacco Worker's Intern. Union.

Stephen J. Burlock (orally), Weatherbee, Woodcock, Burlock & Woodcock, P.A., Bangor, Evan M. Hansen, Penny St. Louis (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for employer.

Robert Piampiano, Nathan S. Szanton, Richardson & Troubh, Portland, amicus curiae, for UPS and J.J. Nissen Co.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

ROBERTS, Justice.

We address in this case questions of law reported on stipulated facts from the Workers' Compensation Commission. *See* 39 M.R.S.A. § 103–D (1989); M.R.Civ.P. 72(a).

Mark A. Tompkins, while employed by Wade & Searway Construction Corporation, injured his left knee in 1987 and his right knee in 1989. United States Fidelity & Guaranty Company (USF & G) was Wade & Searway's insurance carrier at the time of the first injury and Hanover Insurance Company provided insurance coverage at the time of the second. As a result of those injuries and pursuant to memoranda of payment issued by the compensation insurance carriers, Tompkins received compensation benefits based on his average "wages, earnings or salary." 39 M.R.S.A. § 2(2)(A) (1989) (hereinafter "wages"). USF & G does not pay benefits directly to Tompkins but, through an agreement with

Hanover, reimburses Hanover for its share of the compensation benefits Hanover pays to Tompkins.

Tompkins is a member of the United Brotherhood of Carpenters and Joiners of America, Local 621. At the time of the injuries a collective bargaining agreement existed between Wade & Searway and Local 621 requiring the employer to pay a specific dollar amount per unit of employee-time worked to fund various union-established employee fringe benefits. Hanover included the union payments when calculating the compensation benefits it paid to Tompkins. USF & G, however, refused to include the union payments when determining the amount it reimbursed Hanover for USF & G's share of the benefits paid.

In *Ashby v. Rust Engineering Co.,* 559 A.2d 774 (Me.1989), we held that certain employer payments, when based upon employee-time worked and used by the union to fund employee fringe benefits, must be included when determining an injured employee's average wages under section 2(2)(A). Subsequent to our decision in *Ashby,* however, the Legislature rejected that holding and enacted legislation overturning it. P.L.1991, ch. 615, § A–20, *now codified at* 39 M.R.S.A. § 2(2)(G) (Supp.1991) (effective October 17, 1991).[1] In addition, the Legislature provided that section A–20 [section 2(2)(G)] applied "retroactively to employees injured before the effective date of this Act except those employees awarded compensation consistent with the holding in *Ashby v. Rust Engineering,* 559 A.2d 774 (Me.1989)." P.L.1991, ch. 615, § D–25.

On August 21, 1991, following enactment of P.L.1991, ch. 615, but before its effective date, Tompkins filed petitions with the Workers' Compensation Commission seeking a decision that his average weekly wages included the union payments. Wade & Searway countered by filing a petition to reduce his average wages to an amount that excluded the union payments. The

Commission, however, was unable to issue a decision before October 17, 1991, the act's effective date, and by agreement of all parties reported the case to the Law Court.

## I.

By stipulation the parties agree that the payments at issue in the instant case are the same as those we considered in *Ashby.* Thus, under that decision, an employer would be required to include the union payments in an employee's average wages. P.L.1991, ch. 615, by its terms, however, does not apply to "those employees *awarded* compensation consistent with the holding in *Ashby.*" We must determine, therefore, as an initial proposition, whether Tompkins has been "awarded" benefits within the meaning of this exception.

Tompkins argues that his compensation benefits paid pursuant to the memoranda of payments issued by the two insurance carriers constitute an "award" within the scope of this exception. Underlying that argument is the implicit contention that voluntary payments made pursuant to a memorandum of payment should be treated the same as a compensation agreement reached by the parties. It is clear, however, that a memorandum of payment is a "compensation payment scheme" distinct from a compensation agreement approved by the Commission under the Workers' Compensation Act. *See* 39 M.R.S.A. §§ 2(3–A), 51–B(5), 51–B(7). A memorandum of payment is merely evidence of prepayment of benefits to an injured employee claiming compensation, and payments are made regardless of the employer's intention to controvert the claim. *See* 39 M.R.S.A. §§ 51–B(5), 51–B(7). Receipt of such payments does not constitute an acceptance by the employee of the nature and scope of an employer's liability or of the amount or duration of the compensation. *See* 39 M.R.S.A. § 51–B(8). In contrast,

---

**1.** Subsection G provides that: " 'Average weekly wages, earnings or salary' [defined in section 2(2)(A)] does not include fringe benefits, including but not limited to employer payments for or contributions to a retirement, pension,

health and welfare, life insurance, training, social security or other employee or dependent benefit plan for the employee's or dependent's benefit or any other employee's dependent entitlement."

section 51–B(8) specifically distinguishes payments made by decision or agreement. Moreover, a compensation agreement is in the nature of a settlement, *see* 39 M.R.S.A. § 106(2), and, when approved by the Commission pursuant to 39 M.R.S.A. § 94, is binding on the parties, conclusively establishing "the extent of the employee's incapacity and the compensability of his injury." *Hafford v. Kelly*, 421 A.2d 51, 53 (Me.1980). *See also Dufault v. Midland–Ross of Canada, Ltd.*, 380 A.2d 200, 205 (Me.1977). Once the agreement is approved "it has the force of a final adjudication from the date of execution" and is viewed as a "virtual judgment." *Hafford*, 421 A.2d at 53. *See also Wilner Wood Products Co. v. Moyse*, 466 A.2d 1257, 1260 & n. 6 (Me.1983).

Thus, although an approved compensation agreement amounts to an "award" of benefits under the act, we conclude that a memorandum of payment, without more, does not constitute an award of benefits within the meaning of the exception to the retroactivity provision of P.L.1991, ch. 615.

## II.

 Tompkins nonetheless argues that application of the retroactivity provision to injuries occurring before October 17, 1991, violates both the due process clause and the equal protection clause of the Fourteenth Amendment. The Supreme Court has consistently and repeatedly stated that the retroactive aspects of economic legislation meet the requirements of the due process clause if enacted to further a legitimate legislative purpose by rational means. *See, e.g., General Motors Corp. v. Romein*, —— U.S. ——, ——, 112 S.Ct. 1105, 1112, 117 L.Ed.2d 328 (1992); *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S.Ct. 2709, 2717–18, 81 L.Ed.2d 601 (1984). Under that test, "legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations ... even though the effect of the legislation is to impose a new duty or liability based on past acts." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 6, 96 S.Ct. 2882,

2888, 49 L.Ed.2d 752 (1976), *quoted in Norton v. C.P. Blouin, Inc.*, 511 A.2d 1056, 1061 n. 7 (Me.1986), and *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 943 (Me.1982). Moreover, though due process justification for prospective legislation might not always suffice as justification for retroactive legislation, the requirements of due process are met in the latter instance "simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." *Pension Benefit*, 467 U.S. at 730, 104 S.Ct. at 2718.

In *General Motors Corp. v. Romein*, the Supreme Court rejected a due process argument on facts procedurally similar to the instant case. In 1985 the Michigan Supreme Court had construed a workers' compensation statute as allowing employers to reduce certain compensation benefits. In 1987 the Michigan Legislature rejected the court's construction of the law, enacted legislation overturning the court's decision, and required employers to refund $25 million in benefits that had been validly withheld under the earlier law. Under the test set out above, the *Romein* Court held that the 1987 statute's retroactive provision did not violate the due process clause because 1) the statute furthered the legitimate legislative purpose of correcting the Michigan Supreme Court's unexpected construction of the 1980 law, and 2) the statute did so by rational means, i.e., by preserving the "delicate legislative compromise" of the earlier law and by equalizing payments made by employers who had withheld and those made by employers who had not. *Romein*, —— U.S. at ——, 112 S.Ct. at 1112.

 The instant case, like *Romein*, involves a legislative attempt to correct what the Legislature viewed as an improper expansion of Maine's workers' compensation laws governing the "average weekly wage of an individual." Legis.Rec. 1523 (1st Spec.Sess.1991) (statement of Rep. Hastings). In addition, P.L.1991, ch. 615, evidences the Legislature's attempt to restore the Workers' Compensation Act to its pre-*Ashby* status and the "delicate legislative compromise" contained therein. We thus

**878**

conclude that this curative legislation does not violate the requirements of the due process clause.[2] *See generally* 2 Rotunda, Nowak & Young, *Constitutional Law,* § 15.9, at 108 (1986 & Supp.1991); *Sabasteanski v. Pagurko,* 232 A.2d 524, 525 (Me. 1967).

Tompkins argues, notwithstanding *Romein,* that P.L.1991, ch. 615, unconstitutionally impairs his "vested" right to workers' compensation benefits. *See Merrill v. Eastland Woolen Mills, Inc.,* 430 A.2d 557, 560 n. 7 (Me.1981) (legislature is without constitutional authority to retroactively impair vested rights). In support of that argument he quotes language from earlier decisions wherein we stated that an injured employee's right to compensation vests on the date of injury and cannot be reduced or enlarged by subsequently enacted legislation. *See, e.g., Reggep v. Lunder Shoe Products Co.,* 241 A.2d 802, 804 (Me.1968); *Gauthier's Case,* 120 Me. 73, 76, 113 A. 28 (1921); *Mailman's Case,* 118 Me. 172, 106 A. 606 (1919).

■ This notion of a vested right to a certain level of benefits, however, is necessarily reliant on viewing the workers' compensation laws as contractual in nature, a view we have long since rejected. *See Norton v. C.P. Blouin, Inc.,* 511 A.2d at 1061–62 & n. 8 (injured employee's right to compensation benefits does not vest under the contract clause of the Maine Constitution, Me. Const. art. I, § 11, at the time of injury); P.L.1973, ch. 746. Moreover, to the extent, if any, that Tompkins might acquire on the date of injury a vested interest in the *right* to some level of benefits, the due process clause presents no barrier to the Legislature's retroactive adjustment

to the particular *remedy* available in the exercise of that right. *See Sabasteanski,* 232 A.2d at 525. We thus agree with the view expressed by the Michigan Supreme Court that the due process clause creates no vested rights "in the *amount of liability* established at the time of an injury." *Romein v. General Motors Corp.,* 436 Mich. 515, 462 N.W.2d 555, 563 (1990), *aff'd,* —— U.S. ——, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992).

### III.

■ Tompkins next argues that, even assuming the retroactivity provision does not violate the proscriptions of the due process clause, the provision's application to his petition pending before the Commission violates the Fourteenth Amendment's equal protection clause. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). The parties stipulated that Tompkins's petition was one of nineteen similar petitions filed in August and September 1991, and assigned to one of twelve commissioners. Although some other commissioners were able to decide some of those so-called *Ashby* petitions before October 17, 1991, the date the statute became effective, this particular commissioner had decided none of the nineteen petitions before that date. We need not reach Tompkins's equal protection challenge, however, because we conclude that P.L.1991, ch. 615, § A–20, does not apply to those proceedings pending on the statute's effective date. *See* 1 M.R.S.A. § 302 (1980 & Supp.1991); *see also DeMello v. Department of Envtl. Protection,* 611 A.2d 985, 987 (Me.1992).

*State v. Eaton,* 577 A.2d 1162, 1165–66 (Me. 1990); *State v. Rush,* 324 A.2d 748, 753 (Me. 1974) (emphasis in original). As in *Norton v. C.P. Blouin, Inc.,* 511 A.2d 1056, 1061 n. 7 (Me. 1986), P.L.1991, ch. 615, does not transgress the due process clause of the Maine Constitution, and thus it is unnecessary to determine whether that clause provides greater protection from retroactive legislation than that afforded by the Fourteenth Amendment of the United States Constitution.

**2.** Analysis under the due process clause of the Maine Constitution, Me. Const. art. I, § 6–A, yields no different result in this case. The due process analysis applied in *Romein* is substantially similar to the three-part test governing analysis under the Maine Constitution:
1. The *object* of the exercise must be to provide for the public welfare.
2. The legislative *means* employed must be appropriate to the achievement of the ends sought.
3. The *manner of exercising* the power must not be unduly arbitrary or capricious.

Section 302 states in pertinent part that "[a]ctions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby." In *City of Portland v. Fisherman's Wharf Associates II,* 541 A.2d 160, 163 (Me.1988), we stated that section 302 is a rule of statutory construction that is controlling "absent clear and unequivocal language to the contrary." In the instant case the Legislature stated that the amendment "applies to employees injured on or after the effective date of this Act and retroactively to employees injured before the effective date of this Act except those employees awarded compensation consistent with the holding in *Ashby.*" P.L.1991, ch. 615, § D–25. Arguably, the exception is broad enough to include both those awarded compensation prior to the effective date of the Act as well as those awarded compensation as a result of a proceeding pending on the effective date of the Act. In the absence of a clear and unequivocal statement of legislative intent, the rule of construction embodied in section 302 prevails. *See, e.g.,* 23 M.R.S.A. § 156 (1991) ("Notwithstanding Title 1, section 302, this section shall apply to all actions and proceedings pending on the effective date of this Act"), *cited in City of Portland,* 541 A.2d at 163–64.

Because proceedings pending on the effective date of the Act are not subject to section A–20, the statute avoids the dilemma of those petitioners such as Tompkins who are "caught in the switches." *See Schlear v. Fiber Materials, Inc.,* 574 A.2d 876, 879 (Me.1990). The Commission may apply the holding of *Ashby* to the present petition.

The entry is:

Remanded to the Workers' Compensation Commission for further proceedings consistent with the opinion herein.

All concurring.