Melissa THOMPSON

v.

CONSOLIDATED CONSTRUCTORS,
et al.

Supreme Judicial Court of Maine.

Submitted on Briefs May 7, 1996.
Decided June 11, 1996.

James J. MacAdam, McTeague, Higbee, MacAdam, Case, Watson & Cohen, Topsham, for Employee.

Robert J. Piampiano, Daniel F. Gilligan, Troubh, Heisler & Piampiano, P.A., Portland, for Employer.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

In this appeal and cross-appeal, the employer, Consolidated Constructors, appeals from a decision of the Workers' Compensation Board granting the employee, Melissa Thompson's petition to increase her average weekly wage pursuant to 39–A M.R.S.A. § 102(4)(H) (Supp.1995). Thompson appeals from the Board's decision that, notwithstanding the increased average weekly wage, the percentage of her partial earning incapacity could not be adjusted because that determination was *res judicata*. We conclude that the Board, pursuant to *Beaulieu v. Maine Medical Ctr.*, 675 A.2d 110, 111 (Me.1996), correctly applied section 102(4)(H) to Thompson's pre–1993 injury to include fringe benefits in her average weekly wage, and, because the issue of the employee's average weekly wage was expressly reserved in the prior proceeding, Thompson is entitled to a recalculation of her incapacity benefits based on

the higher weekly wage. Accordingly, we vacate the decision of the Board.

Thompson suffered an injury on July 30, 1990 while employed by Consolidated. In May 1993, the Board granted Consolidated's petition for review and reduced Thompson's benefits to reflect a forty-five percent partial earning incapacity. That determination was based in part on the difference between what the Board found to be her then present earning capacity and her average weekly wage. The parties stipulated that, for purposes of deciding the petition for review, Thompson's average weekly wage was $458.79. In granting Consolidated's petition for review, however, the Board expressly reserved Thompson's ability to re-open the calculation of average weekly wage for inclusion of fringe benefits.

In January 1993, Thompson filed a petition to increase her average weekly wage to have fringe benefits included, and for a commensurate increase in her rate of compensation. In furtherance of that petition, Thompson sought, through discovery, information from Consolidated about fringe benefits. Consolidated objected to the discovery on the basis that Thompson had no right to have fringe benefits included in the average weekly wage. The Board concluded that 39-A M.R.S.A. § 102(4)(H)[1] applied to Thompson's pre-1993 injury and she was entitled to have fringe benefits included in the calculation of her average weekly wage, and ordered Consolidated to comply with the discovery. Appellate review of that decision was sought, but was denied because of the lack of a final judgment. Both parties stipulated that if fringe benefits were to be included in Thompson's average weekly wage, the

amount would increase from $458.79 to $610.41.

On remand, the Board granted Thompson's petition to increase the average weekly wage, but nevertheless concluded that the prior 1993 determination that Thompson had a forty-five percent partial incapacity was *res judicata* and could not be altered. Accordingly, the Board did not consider the effect of Thompson's increased average weekly wage on the extent of her partial incapacity. We granted both parties' petitions for appellate review pursuant to 39-A M.R.S.A. § 322 (Supp.1995).

### Employer's Appeal

■ In *Beaulieu*, 675 A.2d at 111, decided after the parties filed their briefs in this appeal, we concluded that section 102(4)(H), providing for the inclusion of fringe benefits in the calculation of the average weekly wage, applies to pre–1993 injuries for proceedings commenced after the effective date of Title 39-A. Our decision in that case disposes of Consolidated's argument that section 102(4)(H) cannot be applied to Thompson's 1990 date of injury.[2]

### Employee's Appeal

■ We agree with Thompson's contention that because the issue of the average weekly wage was specifically reserved in the litigation of the employer's petition for review, she was entitled to proceed with her petition to determine average weekly wage and receive a recalculation of her benefits based on that corrected wage. Decisions of the former Workers' Compensation Commission hold that, in the absence of an express agreement

---

1. 39-A M.R.S.A. § 102(4)(H) (Supp.1995) provides that fringe benefits that are discontinued during an employee's disability be included in the calculation of the average weekly wage:

   H. "Average weekly wages, earnings or salary" does not include any fringe or other benefits paid by the employer that continue during the disability. Any fringe or other benefit paid by the employer that does not continue during the disability must be included for purposes of determining an employee's average weekly wage to the extent that the inclusion of the fringe or other benefit will not result in a weekly benefit amount that is greater than ⅔ of

the state average weekly wage at the time of the injury....

2. Thompson also contends that the fringe benefits at issue in this appeal were not actually "fringe benefits," but part of her actual wages, because they were paid through direct, voluntary deductions from her weekly pay. *Fletcher v. Hanington Bros., Inc.*, 647 A.2d 800, 803 (Me. 1994); *Ashby v. Rust Eng'g Co.*, 559 A.2d 774, 775 (Me.1989). This issue was not raised in the employee's petition for review, nor is there any suggestion in the record that the issue was raised before the Board. Moreover, the record on appeal does not adequately support this argument.

or decision establishing the average weekly wage, the parties are free to file a petition to determine that wage. *Gurney v. Commercial Welding Co.*, Me. W.C.C.App.Div. 733, 735 (Me.1992); *Milles v. Carl Thompson, Jr.*, Me. W.C.C.App.Div. 4152, 4155–56 (Me.1990). *See also Tompkins v. Wade & Searway Constr. Corp.*, 612 A.2d 874, 876 (Me.1992) (employee filed petition to determine average weekly wage after employer voluntarily paid benefits without an award); *Fernald v. Dexter Shoe Co.*, 670 A.2d 1382, 1383 (Me.1996) (employee filed petition to determine average weekly wage in case where employer voluntarily accepted and paid benefits). In this case, the issue of the average weekly wage was not litigated in connection with Consolidated's petition for review, but was accepted as stipulated, and the issue was expressly reserved.

■ As we have stated, "[t]he computation of an injured employee's 'average gross weekly wages' is an essential step in determining the rate of compensation due from [an] employer to [an employee]...." *St. Pierre v. St. Regis Paper Co.*, 386 A.2d 714, 716 (Me.1978). The determination of the percentage of the partial earning capacity is based, at least in part, on the difference between the employee's post-injury actual earning capacity and her pre-injury average weekly wage. 39–A M.R.S.A. § 213(1) (Supp.1995);[3] 39 M.R.S.A. § 55–B (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8; *see also* 39–A M.R.S.A. § 214(1)(B). In this case, the determination of a forty-five percent partial earning incapacity was based in part on Thompson's pre-injury average weekly wage, the exact amount of which was not adjudicated. Accordingly, in these circumstances, it was error for the Board to decline to recalculate the percentage of Thompson's partial incapacity to reflect the increased average weekly wage.

The entry is:

**3.** 39–A M.R.S.A. § 213(1) (Supp.1995) provides in pertinent part:

    **1. Benefit and duration.** While the incapacity for work is partial, the employer shall pay the injured employee a weekly compensation equal to 80% of the difference between the

Decision of the Workers' Compensation Board vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.

injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly wage that the injured employee is able to earn after the injury, but not more than the maximum benefit under section 211....