1997 ME 25

**STATE of Maine, et al.,**

v.

**L.V.I. GROUP.**

Supreme Judicial Court of Maine.

Argued Dec. 7, 1995.
Decided Feb. 18, 1997.

---

Andrew Ketterer, Attorney General, Linda Conti (orally), Assistant Attorney General, Augusta, for plaintiff.

Nicholas Bull, (orally), Mark G. Furey, Thompson, McNaboe, Ashley & Bull, Portland, for defendant.

WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Lehigh Valley Group, Inc. (LVI) appeals from the judgment entered in the Superior Court (Kennebec County, *Perkins, A.R.J.*) in favor of the plaintiffs, the Director of the Bureau of Labor Standards and the State of Maine, in the State's action pursuant to 26 M.R.S.A. § 625–B (1988 & Supp.1996)[1] to obtain severance pay on behalf of the former employees of Dori Shoe Company. LVI contends, *inter alia*, that the trial court erred in holding that a 1989 amendment to the statute, current subsection (1)(C), is constitutional. We affirm the judgment.

[¶ 2] From 1967 until June 1985, Dori Shoe designed and manufactured women's footwear at its plant in Lewiston. LVI owned 100 percent of the stock of HMD Shoes, Inc., a holding company that in turn owned 100 percent of the stock of Dori Shoe until June 1985. LVI largely controlled all financial matters related to Dori Shoe and also influenced the company's hiring and licensing agreement decisions. In May of 1985, HMD entered into an option agreement with Poco Industries that allowed Poco to purchase fifty percent of Dori Shoe's stock. Dori Shoe began a series of employee layoffs in mid-June 1985. On June 28, 1985, Poco exercised its option to purchase fifty percent of Dori Shoe's stock from HMD.

[¶ 3] By mid-August 1985, the entire Dori Shoe manufacturing work force, save for fourteen employees, had been terminated from employment. In November 1985, LVI directed Dori Shoe's comptroller to prepare a severance pay calculation in order to determine the amount of pay owed the employees due to the plant's closing. The amount calculated then was communicated to LVI in December 1985, but no severance pay ever was disbursed. In January 1986, LVI obtained permission from the Department of Commerce, which held a lien on Dori Shoe's plant and equipment following LVI's default on a government loan, to auction off the plant and equipment. On April 11, 1986, LVI auctioned off the plant and closed its doors.

[¶ 4] LVI also had a similar relationship with another shoe company, Loree Footwear Corporation, a shoe manufacturing operation located in Freeport that closed in 1980. Loree was a wholly-owned subsidiary of Lehigh Footwear, Inc., that was in turn wholly-owned by LVI. When Loree ceased to operate, its employees brought an action against Loree, Lehigh, and LVI to recover severance pay pursuant to 26 M.R.S.A. § 625–B (1988). Loree was held liable as the employer, but the trial court rejected the former employees' argument and concluded that Lehigh and LVI, as parent corporations, were not "employers" within the meaning of section 625–B(1)(C) (1988). At the time of the lawsuit, section 625–B(1)(C) defined "employer" as "any person who directly or indirectly owns and operates a covered establishment." We affirmed the trial court in *Curtis v. Le-*

---

1. 26 M.R.S.A. § 625–B (1988 & Supp.1996) provides in part:

    1.....

      A. "Covered establishment" means any industrial or commercial facility or part thereof which employs or has employed at any time in the preceding 12–month period 100 or more persons.

      . . . .

      C. "Employer" means any person who directly or indirectly owns and operates a covered establishment. *For purposes of this definition, a parent corporation is considered the indirect owner and operator of any covered establishment that is directly owned and operated by its corporate subsidiary.*

      . . . .

    E. "Physical calamity" means any calamity such as fire, flood or other natural disaster, or the final order of any federal, state or local governmental agency including adjudicated bankruptcy.

    a covered establishment shall be liable to his employees for severance pay at the rate of one week's pay for each year of employment by the employee in that establishment. The severance pay to eligible employees shall be in addition to any final wage payment to the employee and shall be paid within one regular pay period after the employee's last full day of work, notwithstanding any other provisions of law.

    (Emphasis added.)

*high Footwear, Inc.,* 516 A.2d 558 (Me.1986). Noting that the shareholders are *not* liable for corporate debts at common law, we concluded that the statutory wording "indirectly owns" in subsection (1)(C)'s definition of "employer" did not express a clear legislative intent to extend liability for severance pay to corporate shareholders. *Id.* at 560; *see also Director of Bureau of Labor Standards v. Diamond Brands, Inc.,* 588 A.2d 734, 737 (Me.1991) (statutory definition of "employer" that includes "indirect owner" will not suffice as explicit derogation of successor corporations for debts of their transfers).

[¶ 5] In the meantime, employees of Dori Shoe, those on whose behalf this suit is brought, brought suit against LVI. *See Bernier v. Dori Shoe, et al.,* No. CV–86–244 (And.Cty.Sup.Ct.1986). Subsequent to the decision in *Curtis,* the trial court, on a M.R.Civ.P. 41(a) motion of the plaintiff employees, dismissed the action *without prejudice.*

[¶ 6] In 1989, the Legislature amended the definition of "employer" in the statute to read:

> "Employer" means any person who directly or indirectly owns and operates a covered establishment. *For purposes of this definition, a parent corporation is considered the indirect owner and operator of any covered establishment that is directly owned and operated by its corporate subsidiary.*

26 M.R.S.A. § 625–B(1)(C), *as amended by* P.L.1989, ch. 667, § 1 (emphasis added). The Legislature made the amendment retroactive to October 1, 1975. P.L.1989, ch. 667, § 2. The bill's statement of fact recited the reasoning behind the amendment:

> [The amendment] includes parent corporations within the definition of "employer" for the entire severance pay law and makes the bill retroactive to October 1, 1975, the date on which the severance pay

law took effect. This is done to clarify the original legislative intent of the law, which was incorrectly construed by the Law Court in *Curtis v. Lehigh Footwear, Inc.,* 516 A.2d 558 (Me.1986), to exclude parent corporations from the definition of "employer."

Comm.Amend.A to L.D. 1891, Statement of Fact (114th Legis.1990).

[¶ 7] In November 1990, the State brought the present action to recover severance pay on behalf of former Dori Shoe employees pursuant to the 1989 amendment.[2] LVI moved for a summary judgment, contending that the retroactive application of the amendment is violative of the due process clauses of the Maine and United States Constitutions, Me. Const. art. I, § 6–A; U.S. Const. amend. XIV, § 1.[3] LVI also contends that the law violates the Declaration of Rights in art. I, § 1 of the Maine Constitution; the Takings Clauses of the Maine Constitution, art. I, § 21, and the United States Constitution, amend. V; the Public Purpose Clause of the Maine Constitution, art. IV, pt. 1 & 3; the Equal Protection Clauses of the Maine Constitution, art. I, § 6–A, and the United States Constitution, amend. XIV; that the calculation of severance pay by the trial court is inaccurate; and that the law is otherwise inapplicable. The court (*Mead, J.*) denied the motion, finding that LVI could be considered an "employer" for purposes of severance pay liability. Following a nonjury trial held to determine whether LVI was in fact the parent corporation of Dori Shoe Company and, thus, an "employer" for the purposes of the statute, the court (*Perkins, A.R.J.*) entered judgment for the State, holding LVI liable to the former employees for severance pay in the amount of $260,969.11. This appeal followed.

[¶ 8] Legislative enactments are presumed constitutional. LVI bears the burden of proving that no conceivable state of facts exists to support the statute. *Spare–*

---

**2.** 26 M.R.S.A. § 626–A (1988 & Supp.1996) authorizes the Department of Labor to bring the action on behalf of employees.

**3.** Me. Const. art. I, § 6–A provides in part:
No person shall be deprived of life, liberty or property without due process of law, . . . .

U.S. Const. amend XIV, § 1 provides in part:
[N]or shall any State deprive any person of life, liberty, or property, without due process of law; . . . .

*Time Recreation, Inc. v. State*, 666 A.2d 81, 82 (Me.1995). When possible, we will construe a statute to preserve its constitutionality. *Maine Milk Producers, Inc. v. Commissioner of Agric.*, 483 A.2d 1213, 1218 (Me. 1984).

[¶ 9] In *Norton v. C.P. Blouin, Inc.*, 511 A.2d 1056, 1060 n. 5 (Me.1986), we clarified the proper analysis concerning the retroactive application of statutes:

> If the Legislature intends a retroactive application, the statute must be so applied unless the Legislature is prohibited from regulating conduct in the intended manner, and such a limitation upon the Legislature's power can only arise from the United States Constitution or the Maine Constitution.

A three-part test governs analysis under the due process clause of the Maine Constitution, Me. Const. art. I, § 6–A.

> 1. The *object* of the exercise must be to provide for the public welfare.
>
> 2. The legislative *means* employed must be appropriate to the achievement of the ends sought.
>
> 3. The *manner of exercising* the power must not be unduly arbitrary or capricious.

*Tompkins v. Wade & Searway Const. Corp.*, 612 A.2d 874, 878 n. 2 (Me.1992) (citing *State v. Eaton*, 577 A.2d 1162, 1165–66 (Me.1990)) (emphasis in original) (citation omitted). This test is substantially similar to the analysis governing the United States Constitution. *Tompkins v. Wade & Searway Const. Corp.*, 612 A.2d at 878 n. 2; *see General Motors Corp. v. Romein*, 503 U.S. 181, 191, 112 S.Ct. 1105, 1112, 117 L.Ed.2d 328 (1992). We have summarized the applicable standard as follows: "[T]he retroactive aspects of economic legislation meet the requirements of the due process clause if enacted to further a legitimate legislative purpose by rational means." *Tompkins v. Wade & Searway Const. Corp.*,

612 A.2d at 877 (citing *General Motors Corp. v. Romein*, 503 U.S. at 191, 112 S.Ct. at 1112; *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S.Ct. 2709, 2717–18, 81 L.Ed.2d 601 (1984)).

[¶ 10] LVI contends that due process considerations prohibit the Legislature from enacting a retroactive law that creates a new obligation, debt, or liability. LVI's challenge is made not to the general validity of the statute but, rather, to the amendment enacted by the Legislature following our holding in *Curtis*. LVI argues that although it was adjudicated in *Curtis* to be free of severance pay liability under the pre-amendment language of the statute, it now unfairly faces renewed liability due to the retroactive application of the amendment. We have held previously, although in a different context, that section 625–B does not violate due process even though it imposes liability based in part on past acts. *Director of Bureau of Labor Standards v. Fort Halifax Packing Co.*, 510 A.2d 1054, 1062–63 (Me.1986) (application of statute would not result in unconstitutional impairment of contractual obligations and imposition of liability without due process), *aff'd on other grounds sub nom. Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). " '[L]egislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations ... even though the effect of the legislation is to impose a new duty or liability based on past acts.' " *Tompkins v. Wade & Searway Const. Corp.*, 612 A.2d at 877 (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 6, 96 S.Ct. 2882, 2888, 49 L.Ed.2d 752 (1976)).

[¶ 11] In enacting the amendment to 26 M.R.S.A. § 625–B(1)(C), the Legislature made clear that its purpose was to clarify the original intent of the law following our decision in *Curtis*.[4] The amendment to 26

---

**4.** We note that a final judgment in a case is a decisive declaration of the rights between the parties, and the Legislature cannot disturb the decision in *Curtis v. Lehigh Footwear, Inc.*, 516 A.2d 558 (Me.1986), as to the parties in that action. *See Lewis v. Webb*, 3 Me. 326, 337 (1825) (Legislature may not vacate a final judgment and grant a new trial). *See also Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, ——, 115 S.Ct. 1447,

1457, 131 L.Ed.2d 328 (1995) (legislative attempts to overturn final judicial decisions violates separation of powers). Nor could the Legislature retroactively revive a similar cause of action against LVI on which the statute of limitations had run prior to the effective date of the amendment to section 625–B. The plaintiffs in this case were not parties in *Curtis* and brought

M.R.S.A. § 625–B(1)(C) provides that parent corporations be considered the indirect owners and operators of any covered establishments that are directly owned and operated by a subsidiary. That the employees on whose behalf this action is brought could avail themselves of the provisions of Maine's severance pay law is the clear intent of the amendment.

[¶ 12] Through the amendment's plain language, the Legislature has expressed its determination that a parent corporation is to be considered an "employer" for purposes of severance pay liability. The Legislature rationally could determine that a parent corporation should be responsible for severance pay regarding its subsidiary employees and that such pay retroactively should be available to all employees who have been laid off from the date of the law's *original* enactment. Such a determination could have been, in the Legislature's judgment, the best method of furthering the statute's original purpose.[5] *Spare–Time Recreation, Inc. v. State,* 666 A.2d 81, 82 (Me.1995).

[¶ 13] As noted by the trial court, the retroactivity provision allows employees, terminated both before and after the *Curtis* decision, to benefit from the Legislature's view of the proper interpretation of the severance pay law. "[The Legislature], of course, has the power to amend a statute that it believes we have misconstrued. It may even, within broad constitutional bounds, make such a change retroactive and thereby undo what it perceives to be the undesirable past consequences of a misinterpretation of its work product." *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 313, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994).[6] The statute does not violate the due process clause because it furthers the legitimate legislative purpose of correcting an unexpected construction of section 625–B(1)(C), and does so by rational means. *Tompkins v. Wade & Searway Const. Corp.,* 612 A.2d at 877 (citing *General Motors Corp. v. Romein,* 503 U.S. 181, 191, 112 S.Ct. 1105, 1112, 117 L.Ed.2d 328 (1992)).

[¶ 14] LVI's contentions that the amendment of section 625–B violates the Takings Clause of either the Maine Constitution, art. I, § 21, or the United States Constitution, amend. V, and the Equal Protection Clause of the Maine Constitution, art. I, § 6–A, or the United States Constitution, amend. XIV, and that the statute is unconstitutionally vague, have been addressed and rejected in *Shapiro Bros. Shoe Co. v. Lewiston–Auburn Shoeworkers Protective Assoc.,* 320 A.2d 247, 252–55 (Me.1974). Nor is section 625–B's definition of "employer" as "one who directly or indirectly owns and operates a covered establishment," or its use of the words "parent corporation" unconstitutionally vague. Persons of "general intelligence [do not have] to guess at its meaning, leaving them without assurance that their behavior complies with legal requirements," nor does it force "courts to be uncertain in their interpretation of the law." *Id.* at 253.

[¶ 15] The statute does not contravene the Declaration of Rights provision of the Maine Constitution. The gravamen of that contention is really due process, that the Maine Constitution forbids interference with vested rights or the retroactive creation of new obligations. Statutory retroactivity clauses have been analyzed under the due process clauses of the Maine and United States Constitutions. *See Tompkins v. Wade & Searway Const. Corp.,* 612 A.2d 874 (Me. 1992); *General Motors Corp. v. Romein,* 503 U.S. 181, 112 S.Ct. 1105, 117 L.Ed.2d 328

the action before the expiration of the applicable statute of limitations.

5. The original severance pay law was enacted to address the "economic recession that invariably results in a community where a large number of people simultaneously lose their jobs" and to "alleviate the adverse economic impact upon the employees and the community in which they live." L.D. 421, Statement of Fact (105th Legis. 1971).

6. In *Curtis* we concluded that a parent corporation was not included as an employer within the meaning of section 625–B(1)(C) before it was amended. The definition of employer however, did include indirect owners, and parent corporations were not expressly excluded from that definition.

(1992). Our analysis has not found any due process violation.

[¶ 16] LVI also contends that because the retroactivity provision lacks a rational nexus to a valid public purpose and is arbitrary and capricious, it violates the Public Purpose Clause of the Maine Constitution. We disagree. The Public Purpose Clause states in relevant part that "[t]he Legislature ... shall have full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State, not repugnant to this Constitution, nor to that of the United States." Me. Const. art. IV, pt. 3, § 1. The Legislature's stated purpose of promoting the economic welfare of individuals and communities displaced by layoffs has been upheld as a valid public purpose in *Shapiro Bros. Shoe Co. v. Lewiston–Auburn Shoeworkers Protective Assoc.,* 320 A.2d at 254–55. That such a purpose has now been clarified and made retroactive by a subsequent Legislature does not diminish the statute's constitutionality.

[¶ 17] Additional contentions of LVI, that LVI is not a parent corporation of Dori Shoe within the meaning of section 625–B, that the court erred in its determination of severance pay, and that LVI is not liable for severance pay because Dori Shoe terminated its operation due to a physical calamity as defined in section 625–B(1)(E), are without substantial merit.

The entry is:

Judgment affirmed.

GLASSMAN, RUDMAN, and DANA, JJ., dissent.

GLASSMAN, Justice, with whom RUDMAN and DANA, JJ., join, dissenting.

[¶ 18] Because I agree with LVI that the amendment to section 625–B(1)(C), enacted in 1989 (effective July 1, 1990) violates the Maine and United States Constitutions, I respectfully dissent.

[¶ 19] As noted by the Court, the principle has long been established at common law that in the absence of fraud or bad faith shareholders are not liable for corporate debts. In *Atlantic Oceanic Kampgrounds v. Camden Nat. Bank,* 473 A.2d 884, 886 (Me. 1984), we reaffirmed an equally well-established principle clearly articulated over a half century ago in *Palmer v. Town of Sumner,* 133 Me. 337, 177 A. 711 (1935), that

> [i]t is not to be presumed that the Legislature intended to abrogate or modify a rule of the common law by the enactment of a statute upon the same subject; it is rather to be presumed that no change in the common law was intended, unless the language employed clearly indicates such an intention.... The rules of common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language.

*Id.* at 340, 177 A. 711 (citations omitted). The Court properly relied on these two well-established principles when it determined in *Curtis v. Lehigh Footwear, Inc., et al.,* 516 A.2d 558 (Me.1986), that the language of 26 M.R.S.A. § 625–B(C) (1988) did not impose on Lehigh Valley Industries, Inc. or Lehigh, a wholly-owned subsidiary of Lehigh Valley Industries, Inc.,[7] the obligation of severance pay to the employees of Loree Footwear Corporation, a wholly-owned subsidiary of *Lehigh.*

[¶ 20] Absent the 1989 legislation, the record in this case would not support a determination that LVI as a stock owner of H.M.D. is responsible for Dori's liabilities.[8]

---

**7.** LVI, the defendant in the present action, was formerly known as Lehigh Valley Industries, Inc. LVI is a Delaware corporation. Dori Shoe Company, also named as a defendant in the present action, is a Massachusetts corporation that operated a shoe manufacturing plant in Lewiston.

**8.** LVI has never owned stock in Dori Shoes, Inc.; LVI owned all the H.M.D. stock. H.M.D. in turn owned all the Dori stock. In June 1985, pursuant to the May 10, 1985 agreement between the parties granting Poco an option to purchase 50%

of the stock in Dori in consideration, *inter alia,* of Poco's contribution of $150,000 to the working capital of Dori, H.M.D. sold 50% of the Dori stock to Poco. Poco's stock was owned by Jeffrey K. Endervelt, the former chief executive officer and chairman of the board of directors of LVI, and his wife, Polly Bergen. There is no contention that this sale was for fraudulent or illegal purposes or to circumvent a statute, thereby defeating legislative policy.

*See, e.g., United Paperworkers Intern. Union v. T.P. Property Corp.*, 583 F.2d 33, 35 (1st Cir.1978) (based on examination of federal common law, parent corporation's ownership of all of subsidiary's stock, and intertwining of management "as to be almost indistinguishable," not sufficient to pierce corporate veil of parent stockholder and bind it to subsidiary's arbitration agreement).

[¶ 21] An analysis of the cases relied on by the Court to support the 1989 legislation discloses that in each case the constitutional challenges arose in the context of the existing and uncontroverted legal relationship between the parties of employer and employee, and the challenged statute was determined to be a lawful adjustment of the rights and burdens existing in that relationship. In the instant case, the 1989 enactment of the amendment to section 625–B(1)(C) created a new employer-employee relationship and, by P.L. 1989, ch. 667, § 2, made that newly created relationship retroactive to October 1, 1975, and imposed a previously nonexistent liability on that newly created relationship.

[¶ 22] The law is well established in Maine that "[t]here can be no doubt that Legislatures have the power to pass retrospective statutes, if they affect remedies only.... But they have no constitutional power to enact retrospective laws which impair vested rights or create personal liabilities." *Coffin v. Rich*, 45 Me. 507, 514 (1858). *See Thut v. Grant*, 281 A.2d 1, 6 n. 8 (Me. 1971) ("This aspect of the law was not questioned or adversely affected by the holding in *Hawthorne v. Calef*, [69 U.S. (2 Wall.) 10, 17 L.Ed. 776] (1864).") A "curative statute ... clearly designed to have retrospective application ... must be carefully construed so as not to violate constitutional requirements." *Sabasteanski v. Pagurko*, 232 A.2d 524, 525 (Me.1967) (citing *Coffin* and setting forth the above-quoted principle in that case).

The record reflects no allegation or evidence that each of the corporations was not established as separate entities, did not have its own board of directors and did not maintain its own set of corporate books and headquarters. Nor is there any allegation or evidence that assets or income of H.M.D. or Dori were diverted to LVI. Al-

[¶ 23] Pursuant to section 625–B(1)(C), the liability, if any, for the remedy of severance pay to all eligible employees of Dori attached on the date Dori ceased its manufacturing operations in August 1985. *Director of Bureau of Labor Standards v. Fort Halifax Packing Co.*, 510 A.2d 1054, 1063 (Me.1986), *aff'd*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). It is undisputed that the complaint in *Bernier v. Dori Shoe, et al.* filed in the Superior Court on June 13, 1986, failed to state a claim against LVI on which any relief could be granted. By its present complaint filed in December 1990, the plaintiff seeks relief from LVI for the statutory remedy of severance pay based on the amendment to section 625–B(1)(C). This curative, retrospective amendment cannot be construed to affect the *remedy only* of eligible employees—the *remedy* remains as it was prior to July 14, 1990, i.e., one week's pay for each year of employment, as provided in section 625–B(2). It can only be construed as creating the *personal liability* of a stockholder for the unchanged remedy. Applying the required legal principles to section 625–B(1)(C), it is apparent that the Legislature violated the constitutional limitations placed on it when enacting retrospective legislation.

[¶ 24] The taking clause of the Fifth Amendment of the United States Constitution made applicable to the states by the Fourteenth Amendment and set forth in Art. I, § 21 of the Maine Constitution prohibits the taking of property for public use without just compensation. Here, the property in question is the money of LVI. In analyzing taking cases, the United States Supreme Court has relied on the test articulated in *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 212, 106 S.Ct. 1018, 1019–20, 89 L.Ed.2d 166 (1986), that three factors must be considered: "(1) 'the economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expecta-

though LVI was involved in the management of Dori, there is no evidence that mismanagement by LVI caused the demise of Dori's operations. The individuals who worked at the Dori facility were hired by Dori on terms of mutual agreement between them, paid by Dori and supervised by Dori.

tions'; and (3) 'the character of the governmental action.'" (quoting *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978)). Examining the present case in light of these factors supports the conclusion that the challenged legislation violates the Taking Clause. It cannot be said that the challenged legislation does not interfere with "the distinct investment-backed expectations" of LVI. There was no expectation that the closing of Dori Shoe, Inc. in 1985 would in 1995 impose on LVI liability for the severance pay to the employees of Dori.

[¶ 25] Nor do I agree with the Court that our decision in *Shapiro Bros. Shoe Co. v. Lewiston–Auburn Shoeworkers Assoc.,* 320 A.2d 247, 252–54 (Me.1974), is determinative of LVI's contention that section 625–B(1)(C) is unconstitutionally vague. In *Shapiro,* the plaintiff shoe company by a written notice posted on the company's bulletin board announced to its employees that it was "voluntarily going out of business and shall conclude all of its activities in the manufacture of shoes on February 22, 1973." In fact, the company ceased operations on February 5, 1973. On report ordered by the trial court, we addressed Shapiro's action seeking, *inter alia,* a declaratory judgment that the phrases (1) "going out of business" and, (2) "he shall give one month's prior notice" contained in paragraph two of 26 M.R.S.A. § 625 [9] were totally ambiguous and unconstitutionally vague. The challenged language of paragraph two stated in pertinent part that "[w]henever a person, firm or corporation employing 100 or more employees, is voluntarily going out of business, he shall give one month's prior notice to his employees...." We properly determined that the challenged language did not violate the due process protection against vagueness. Recognizing that the statute involved a loss of property and a possible due process violation, we stated the following test:

> A statute is void for vagueness when it sets guidelines which would force men of general intelligence to guess at its meaning, leaving them without assurance that

their behavior complies with legal requirements and forcing courts to be uncertain in their interpretation of the law. (Citation omitted). Such an unacceptable statute would often be 'so vague and indefinite as really to be no rule or standard at all.' *A.B. Small Co. v. Am. Sugar Ref. Co.,* 267 U.S. 233, 239, 45 S.Ct. 295, 297, 69 L.Ed. 589 (1925).

*Id.* at 253.

[¶ 26] LVI specifically contends, as it did before the trial court, that the phrase "parent corporation" used in the 1989 amendment to section 625–B(1)(C) is unconstitutionally vague. I agree. That it does not meet the test set forth in *Shapiro* is clearly demonstrated by a review of the record. In the trial court's decision denying LVI's motion for a summary judgment, the court (*Mead, J.*), in response to LVI's contention that it was not a "parent corporation" because at the time Dori closed H.M.D. it owned only 50 percent of Dori stock, ruled that "the standard to determine whether a corporation is a 'parent' of another is whether the former has working control of the latter by virtue of stock ownership." When presented with the same contention at the time of the trial of this matter, the court (*Perkins, A.R.J.*) ruled, "This subsection defines an employer as including a parent corporation. A parent corporation, however, need not exercise control over its subsidiary.... An indirect owner and operator need not exercise direct control over a facility; the source of its liability is its ownership of the subsidiary ... the court finds that the amount of control exercised by the parent may be minimal in order for it to be found to be an indirect owner and operator." The court further stated that "[a]s for Poco's purchase of half of Dori's shares, the court finds that this eleventh hour purchase does not change LVI's role as a parent corporation of Dori."

[¶ 27] The Court's summary dismissal of this issue by stating that "persons of 'general intelligence [do not have] to guess at its meaning without assurance that their behav-

---

**9.** 26 M.R.S.A. § 625, a predecessor to the present statute, was repealed and replaced by P.L. 1973, ch. 545.

ior complies with legal requirements' nor does it force 'courts to be uncertain in their interpretation of the law'" (quoting *Shapiro*, 320 A.2d at 253), is belied by the record. LVI's unanswered inquiries,

> If stock ownership is the key, how much is enough? Is direct ownership in the putative subsidiary required? ... In this case were LVI and Poco both parents when the Lewiston facility closed because each held fifty percent of HMD? [If] ownership were divided three or more ways, would all be parents? Could a corporation avoid being deemed a parent by remaining passive while other stockholders, individual or corporate, actively participate in business affairs? [H]ow can the ordinary person determine what constitutes "working control" or "minimal" control?

coupled with the confusion demonstrated by the different definitions articulated by the trial court when presented with the issue, bring in focus that the challenged phrase is "so vague and indefinite as really to be no rule or standard at all." *Shapiro*, 320 A.2d at 253.

[¶ 28] I would vacate the judgment and remand this case for the entry of a judgment in favor of LVI.