STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, SS.                                    Docket No. CV-00-41

FILED AND ENTERED
SUPERIOR COURT

JUN 2 8 2001

PENOBSCOT COUNTY

Paper, Allied-Industrial, Chemical
and Energy Workers International
Union et al.,

        Plaintiffs

        v.                                **ORDER ON DEFENDANTS'
                                                  MOTION TO DISMISS**

Sherman Lumber Company et al.,

        Defendants


    Pending before the court is the defendants' motion to dismiss counts 2 through 10 of the plaintiffs' complaint.

    This proceeding is based on factual allegations that in 1999, defendant Sherman Lumber Company took steps that resulted in the loss of jobs for 50 or more of its employees, without providing proper notice to those affected employees. On that basis, the plaintiffs, who are international and local labor unions representing the interests of the affected employees, have alleged violations of federal statute, state statute and common law rights. The plaintiffs assert those claims against the corporate employer and four individuals ("the individual defendants"), all of whom are alleged to be shareholders and operators, and three of whom are alleged to be officers of the corporation.

    After the plaintiffs commenced this action in the Superior Court,

1

Penobscot County, the defendants removed the case to federal court. *See* 29 U.S.C. § 1441(a). The defendants then filed the motion at bar in federal court. Ultimately, the federal court granted the defendants' motion to dismiss count 1 of the complaint, which alleged a violation of federal labor statutes. That court further concluded that the remaining counts of the complaint were not preempted on the basis of federal statutory provisions. Having addressed and resolved the federally based issues generated by the complaint and by the defendants' motion, the court declined to retain jurisdiction over the proceeding. Consequently, the federal court remanded the case to this court. Those aspects of the defendants' motion to dismiss that were not resolved by the federal court are addressed in this order.

"A motion to dismiss tests the legal sufficiency of the complaint." *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994). On a motion to dismiss, the complaint must be examined "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* A dismissal is proper "only when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Hall v. Board of Environmental Protection*, 498 A.2d 260, 266 (Me. 1985). *See also Heber v. Lucerne-in-Maine Village Co.*, 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066.

As the motion relates to several of the counts of the complaint, the defendants rely on material extrinsic to the complaint. The parties have agreed to suspend any discovery until the issuance of this order. *See* "Assented-To Motion to Amend or Alter Scheduling Order" dated

2

September 28, 2000. Because the plaintiffs, with the agreement of the defendants, have elected to defer any discovery, the court concludes that it is premature to treat the pending motion as one for summary judgment. *See* M.R.Civ.P. 12(b). To the extent that this order does not dispose of claims on which the defendants seek summary judgment, they may file such a motion as the rules and scheduling order allow.

## A. Count 2 (corporate liability under Maine Severance Pay Act)

The federal court rejected the defendants' contention, grounded on the provisions of the Labor-Management Relations Act, 29 U.S.C. 185(a), that the plaintiffs' claim in count 2 was preempted by the terms of the parties' collective bargaining agreement. The remaining basis for the defendants' motion to dismiss count 2 is factual in nature and thus rests on material extrinsic to the four corners of the complaint. For the reasons set out above, the balance of the defendants' motion to dismiss count 2 is denied without prejudice to the defendants' right to move for summary judgment pursuant to M.R.Civ.P. 7 and 56, upon a proper factual record.

## B. Count 3 (individual shareholder liability under Maine Severance Pay Act)

In count 2, the plaintiffs allege that Sherman Lumber Company (a corporate entity) is liable under the Maine Severance Pay Act, 26 M.R.S.A. § 625-B. In count 3, the plaintiffs allege that the individual defendants are liable under the same statute, based on allegations that they are shareholders and owners of the corporate entity. On this basis, they argue that the individual defendants are "employers" within the meaning of section 625-B(1)(C) and, in that capacity, that they are liable for severance

3

pay under section 625-B(2).

This issue is one of statutory construction. Statutory interpretation is a matter of law. *Estate of Spear*, 1997 ME 15, ¶ 6, 689 A.2d 590, 591. "The fundamental rule in statutory construction is that words must be given their plain ordinary meaning." *Id.* at ¶ 7, 689 A.2d at 591. In interpreting a statute, the court reads the plain meaning of the statutory language in order to give effect to the intent of the legislature. *Id.*

Under the Maine Severance Pay Act, an "employer" is liable for severance pay benefits owed to affected employees. 26 M.R.S.A. § 625-B(2). An "employer" is defined as "any *person* who directly or indirectly owns and operates a covered establishment." 26 M.R.S.A. § 625-B(1)(C) (emphasis added). For purposes of the MSPA, a "person" is "any individual, group of individuals, partnership, corporation, association or other entity." 26 M.R.S.A. § 625-B(1)(D). Therefore, under this syllogism, any individual who directly or indirectly owns the business whose employees are entitled to severance pay is liable for the payments of those benefits. The plain language and meaning of these statutory provisions clearly reveals a legislative intent to depart, in these limited circumstances, from the conventional principle that shareholders are not liable for corporate debts. *See Caron v. M.S.A.D. 27*, 594 A.2d 560, 563 (Me. 1991) (rule of statutory construction). Therefore, the allegations of individual liablity for severance pay states a claim upon which relief can be granted.

The defendants argue that Maine caselaw has held that section 625-B does not unambiguously create shareholder liability for the severance pay obligations incurred by a covered establishment. If (despite the court's

construction noted above) the defendants are correct, then because of such an ambiguity in the statute, consideration must be given to its history, the policy behind it, and other extrinsic aids to determine the legislative intent. *Arsenault v. Crossman*, 1997 ME 92, ¶7, 696 A.2d 418, 421.

In *Curtis v. Lehigh Footwear, Inc.*, 516 A.2d 558 (Me. 1986), the Law Court considered the question of whether a corporate shareholder is liable for severance pay under section 625-B, when the covered establishment was owned by a subsidiary of the shareholder's corporation. In other words, is the *owner of the owner* of the covered establishment liable under section 625-B? The relationship of the defendant to the covered establishment in *Curtis* is materially different than the one at issue here. In the case at bar, the plaintiffs assert their section 625-B claim against individuals who are alleged to be the direct owners (that is, the direct shareholders) of the covered establishment. This circumstance is expressly within the scope of sections 625-B(1)(C) and (D). The *Curtis* Court was asked to address a more indirect ownership relationship, which raised more serious questions about the extent to which the legislature intended to abrogate traditional common law notions of shareholder immunity. Thus, the court does not find *Curtis* and its progeny to be relevant here.

Even if *Curtis* and related cases are applicable, the post-*Curtis* developments demonstrate that the plaintiffs' claim is a proper one. In *Curtis*, the Law Court held that section 625-B did not reveal a clear legislative intent to render a corporate shareholder liable for the debts of a covered establishment owned by a corporate subsidiary. *Curtis*, 516 A.2d at 560. In response to *Curtis*, the legislature amended its definition of employer by adding the following sentence to the provision considered by

5

the *Curtis* Court: "For purposes of this definition, a parent company is considered the indirect owner and operator of any covered establishment that is directly owned and operated by its corporate subsidy." P.L. 1989, c. 667, § 1; *see also* 26 M.R.S.A. § 625-B(1)(C) (Supp. 2000). The statement of fact supporting the bill that was enacted as the 1989 amendment to section 625-B(1)(C) stated in part: "This is done to clarify the original legislative intent of the law, which was incorrectly construed by the Law Court in *Curtis v. Lehigh Footwear, Inc.*, 516 A.2d 558 (Me. 1986), to exclude parent corporations from the definition of 'employer.'" *See* L.D. 1891, 114th Leg., Statement of Fact.

The Law Court considered the 1989 amendment in *State of Maine v. L.V.I. Group*, 1997 ME 25, 690 A.2d 960, and held, "Through the amendment's plain language, the Legislature has expressed its determination that a parent corporation is to be considered an 'employer' for purposes of severance pay liability." *Id.*, ¶ 12, 690 A.2d at 965.[1]

The individual defendants argue that they cannot be deemed "employers" within the meaning of the first sentence of section 625-B(1)(C) because the Law Court held in *Curtis* that the provision was not sufficient to create shareholder liability. They also argue that the 1989 amendment to section 625-B(1)(C) does not render them liable as an "employer" because that amended provision relates only to parent corporations, rather than individual shareholders.

The defendants' analysis, however, overlooks the significance of the

---

[1] Indeed, framed more precisely, the *L.V.I.* Court found that the statutory definition of an "employer" included a corporation (Lehigh Valley Group, Inc. ("LVI")) that owned 100% of the shares of stock of a second corporation (HMD Shoes, Inc.) that, in turn, owned 100% of the shares of the covered establishment.

6

1989 amendment. In *Curtis*, the Law Court focused its consideration on whether the legislature had clearly expressed an intention to abrogate the common law principle that shareholders are not liable for the debts of corporate subsidiaries. The Court held that the phrase "indirectly owns" did not embody a legislative goal of exposing corporate shareholders to the statutory severance pay liabilities of its subsidiaries. After the Court concluded that the legislature had not clearly expressed such an intention, the legislature in fact amended section 625-B(1)(C) to provide that corporate shareholders are liable for the debts of subsidiary corporations. The Court subsequently found that the legislature had expressed its intent with sufficient clarity to overcome contrary common law principles that corporate shareholders were so liable under the severance pay statute. *L.V.I. Group*, 1997 ME 25, ¶ 12, 690 A.2d at 965.

The 1989 amendment did not go beyond a clarification of the liability of corporate shareholders in the circumstances addressed in *Curtis*. However, *Curtis* involved an issue of corporate shareholder liability for the debts of corporate subsidiaries. It is thus not surprising that the legislature's response to the holding in *Curtis* focused on that circumstance. However, under section 625-B(1)(D), an individual and a group of individuals are a "person" who is liable for the establishment's severance pay obligation. Similarly, a corporation is such a "person." Any such "person who directly or indirectly owns and operates a covered establishment is an "employer." 26 M.R.S.A. § 625-B(1)(C). The legislature made clear, and the Law Court has found under this statute, that a corporate shareholder is a "person" who is liable to the employees of a covered establishment for their severance pay. The ambiguity identified

in *Curtis* -- and eliminated in the 1989 amendment -- does not affect the definition of a "person." Rather, that ambiguity related to the nature of the relationship between the "person" and the covered establishment.

Therefore, if there is any ambiguity in the language that extends any section 625-B liability of a covered establishment to the shareholders of that entity, then the legislative history underlying the 1989 amendment provides extrinsic insight into the legislature's intention that persons such as the individual defendants, as direct owners, are exposed to liability under this statute. Here, the plaintiffs have alleged that the individual defendants are shareholders and owners of the covered establishment. Consequently, the complaint is adequate to allow those plaintiffs to proceed with their claim of individual liability under section 625-B.

**C. Counts 4-7 (individual director liability)**

In these four counts, the plaintiffs allege that during the period of Sherman Lumber Company's insolvency (beginning in June 1998), the individual defendants received distributions or other forms of payments from the corporation, when such payments violated the provisions of the Maine Business Corporations Act, 13-A M.R.S.A. § 101 *et seq.* On this factual predicate, the plaintiffs seek judgment against the individual defendants for unpaid severance pay.

Although each of these counts is entitled "Shareholder Liability," the plaintiffs allege in their complaint that the individual defendants are directors of Sherman Lumber Company. Complaint at ¶¶ 13, 17, 21 and 25. In response to the pending motion to dismiss counts 4 through 7, the plaintiffs argue that their theory of liability rests on the individual defendants' capacities as directors, rather than as shareholders. Title 13-A

M.R.S.A. § 720(2) exposes directors to personal liability if they "vote for or assent to" certain corporate distributions and payments. Here, the plaintiffs have alleged only that the individual defendants received such payments with knowledge that those payments were made in violation of the provisions of the Maine Business Corporation Act. These allegations are insufficient to state a claim under section 720.

At oral argument on the pending motion, the plaintiffs sought to amend counts 4 through 7 in order to include additional allegations that might meet the criteria for a proper claim under section 720. The plaintiffs then sent a letter dated December 7, 2000, confirming their desire to amend their pleadings in this way. The court does not view those mechanisms a proper ones by which to amend a pleading in the way that the plaintiffs propose. Therefore, counts 4 through 7 will be dismissed without prejudice to the plaintiffs' right to move to amend their complaint in accordance with the modified scheduling order as provided herein.

The court does not reach that part of the defendants' motion resting on consideration of extrinsic material.

### D. Count 8 (individual shareholder fiduciary liability)

In count 8, the plaintiffs allege that the individual defendants "had the obligation to act as trustees and fiduciaries for the affected employees" when Sherman Lumber Company became insolvent. Complaint at ¶ 59. The plaintiffs further allege that the individual defendants violated that fiduciary duty by failing to pay the affected employees any amounts due to them. *Id.* at ¶¶ 60-61. Elsewhere in the complaint, the plaintiffs allege that after the corporation became insolvent, the individual defendants accepted payments from the corporation in violation of the provisions of

9

the Maine Business Corporation Act. *See* complaint at counts 4-7.[2]

A corporate officer stands in a fiduciary relationship to the corporation itself. *Glynn v. Atlantic Seaboard Corp.* 1999 ME 53, ¶ 12, 728 A.2d 117, 120. Similarly, corporate directors have the same fiduciary responsibility to the corporation. *Rosenthal v. Rosenthal*, 543 A.2d 348, 352. *See generally* 13-A M.R.S.A. § 716 (imposing on officers and directors of a corporation an obligation to act in good faith and reasonable care toward the corporation and its shareholders). Because these fiduciary duties are owed to the corporation, persons and entities outside of the corporate structure generally do not have standing to litigate an alleged breach of that duty. *See also Tiernan v. Barresi*, 944 F.Supp. 35, 37 (D.Me. 1996) (applying Maine law).

As a matter of common law, however, when a corporation becomes insolvent, then the corporate directors and officers are viewed as trustees of the corporate assets, and they then become engaged in a fiduciary relationship with the corporation's creditors. *Mitsubishi Caterpillar Forklift America, Inc. v. Superior Service Associates, Inc.*, 81 F.Supp.2d 101, 115-16 (D.Me. 1999) (applying Maine law). *See also Symonds v. Lewis*, 94 Me. 501, 505 (1901); 3 BETH A. BUDAY & GAIL O'GRADNET, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 849 (1994). Here, the complaint may be read to allege that the individual defendants knowingly received improper payments from the corporation at a time when the corporation was subject to a legal obligation to pay other creditors, such as the affected

---

[2]Although the court grants the defendants' motion to dismiss counts 4 through 7 and they cannot constitute a basis for relief, the factual allegations in those counts -- which are incorporated by reference into count 8 -- remain in effect as part of the factual basis for count 8.

employees.[3] Under these factual circumstances alleged in the complaint, count 8 states a claim on which relief could be granted.[4]

The defendants argue in part that the enactment of the Maine Business Corporation Act, 13-A M.R.S.A. § 101 *et seq.*, supersedes such common law doctrines. However, as is discussed in a different context elsewhere in this order, "although the Legislature is free to abrogate a long-standing rule of common law, such intent is not to be presumed in the absence of clear and explicit language." *Curtis*, 516 A.2d at 560 (citation and internal punctuation omitted). Here, the provisions of the statutes governing corporations do not reveal a legislative intent to abolish the principle of common law on which count 8 rests.

### E. Count 9 (responsible corporate officer liability)

The plaintiffs next claim that the individual defendants are personally liable for any severance pay due to the employees of Sherman Lumber Company, because they are "responsible corporate officers." Recognizing that there is no precedent under Maine law for imposition of liability on corporate representatives based on this theory, the plaintiffs rely on authority from other jurisdictions. The court has reviewed that caselaw.

---

[3] The defendants correctly note that the plaintiffs have not alleged a sequence of events. Because of the deferential level of scrutiny associated with the motion at bar, this ambiguity does not preclude the availability of relief.

[4] The defendants correctly point out that in other factual contexts, a party who alleges the existence of a fiduciary relationship must provide "an articulation in the complaint of the specific facts of a particular relationship." *Bryan R. v. Watchtower Bible & Tract Society*, 1999 ME 144, ¶ 22, 738 A.2d 839, 847. Here, the plaintiffs' allegations include those factual elements that, as a matter of common law, could generate the basis for relief under that theory.

The two seminal opinions (both involving criminal prosecutions) establishing and defining the parameters of responsible corporate officer liability were issued by the Supreme Court. *See United States v. Park*, 421 U.S. 658, 44 L.Ed.2d 489 (1975); *United States v. Dotterweich*, 320 U.S. 277, 88 L.Ed. 48 (1943). The Supreme Court of Hawaii has written a thoughtful and helpful analysis of the purposes underlying that law. *See State v. Kailua Auto Wreckers, Inc.*, 615 P.2d 730 (Haw. 1980). As that court noted, perhaps the most important reason underlying the notion of responsible corporate officer liability is to enhance the deterrent effect of certain types of laws that restrict corporate conduct. Corporations act through their human agents. In cases involving the public interest, if directors themselves face sanctions for decisions they make on behalf of the corporation, then those directors will be more highly motivated to ensure that the corporation's conduct will be lawful, than if those directors were immune from liability. *Id.* at 738-39. *See generally Dotterweich*, 320 U.S. at 282-83, 88 L.Ed. at 52-53.

Here, at least in the circumstances of this case as alleged by the plaintiffs, there does not exist a justification for invoking the responsible corporate officer liability doctrine. By statute, in some circumstances, certain corporate agents are exposed to liability for claims of the corporation's creditors. 13-A M.R.S.A. § 720. Further, as the plaintiffs have alleged in count 8, corporate representatives may be liable to those creditors based on common law principles of fiduciary responsibilities. When the corporation is liable for severance pay benefits under 26 M.R.S.A. § 625-B, shareholders are jointly liable for that obligation. The grounds for the other claims asserted against the individual defendants are

12

not materially different than the basis set out in count 9. Consequently, a theory of responsible corporate officer liability does not provide any more protection to the plaintiffs than they already have though their other claims.

Therefore, because of these several bases on which shareholders, directors and other officers may be held liable for the wrongful conduct of the corporation, count 9 does not set out a claim upon which relief could be granted in the circumstances of this case. The court need not and does not address the question of whether in Maine the responsible corporate officer liability doctrine is a valid cause of action in other factual contexts.

## F. Count 10 (corporate veil)

Finally, the plaintiffs allege that three of the four individual defendants (Leslie T. Robinson, Michael A. Robinson and Craig E. Robinson) have engaged in conduct by which the protections created by a corporate structure have been forfeited and that they are personally liable for the severance pay obligations of Sherman Lumber Company. In order to pierce the corporate veil, a claimant "must establish that: (1) the defendant abused the privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence." *Johnson v. Exclusive Properties Unlimited*, 1998 ME 244, ¶ 6, 720 A.2d 568, 571.

The plaintiffs allege that these three individual defendants have used the assets of Sherman Lumber Company for their personal benefit and for the benefit of other businesses that they control, *see* complaint at ¶ 71, that they have commingled assets of Sherman Lumber Company with their personal assets and the assets of other businesses that they control,

13

*id.* at 72, and that they have "dominated and controlled the operation and assets of Sherman Lumber Company. . .," *id.* at 73. These individual defendants are alleged to be a directors, owners and shareholders of Sherman Lumber Company. Additionally, Michael A. Robinson and Craig E. Robinson are alleged to be corporate officers. Elsewhere in their complaint, the plaintiffs have alleged that Sherman Lumber Company has been insolvent since June 1998. They further allege that during this period of insolvency, the three individual defendants knowingly received distributions or other payments in violation of state statute and other principles of law, and that the corporation's failure to make severance pay benefits to employees who were entitled to such payments under state law resulted from the individual defendants' breach of their fiduciary duties owed to the employees.

The parties have not cited a specific case where the corporate veil was pierced in circumstances similar to those alleged here. The defendants attempt to limit the application of this doctrine to the facts of those cases where the Law Court has found that penetration to be proper. While this court recognizes that corporate veils are to pierced sparingly, *Johnson*, 1998 ME 244, ¶ 5, 720 A.2d at 571, the defendants' limited approach diminishes the general principles set out in that case. Here, when the specific allegations included in count 10 are combined with the other allegations noted above, the court cannot say as a matter of law that the plaintiffs' claim falls beyond the scope of the criteria noted in *Johnson*.

The entry shall be:

For the foregoing reasons, the defendants' motion to dismiss is

granted in part: counts 4-7 (alleging "shareholder liability") and count 9 (alleging "responsible corporate officer liability") are dismissed for failure to state a claim upon which relief can be granted. Otherwise, the motion to dismiss is denied.

The scheduling order dated September 19, 2000, is modified as follows:

(1) Motions to join additional parties and to amend the pleadings shall be filed no later than July 31, 2001.

(2) The plaintiffs shall designate their experts no later than July 31, 2001. The defendants shall designate their experts no later than September 30, 2001.

(3) Discovery shall be completed no later than November 30, 2001.

Except to the extent modified herein, the scheduling order dated September 19, 2000, shall remain in full force and effect.

Dated: June 27, 2001

_____
JUSTICE, SUPERIOR COURT

15

Date Filed ___3/2/2000___ ___PENOBSCOT___ Docket No. ___CV-2000-41___

County

REMOVED TO U.S. DISTRICT COURT

Action __CONTRACT - SEVERANCE PAY__

Assigned to Justice Jeffrey L. Hjelm

PAPER-ALLIED-INDUSTRIAL, CHEMICAL and
ENERGY WORKERS INTERNATIONAL UNION (PACE)
and its LOCAL UNION 1363 (f/k/a UNITED
PAPERWORKS INTERNATIONAL UNION and its
LOCAL 1363)

SHERMAN LUMBER COMPANY,
LESLIE T. ROBINSON, MICHAEL A. ROBINSON,
CRAIG E. ROBINSON and AL ELLIS

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JONATHAN S. BEAL, ESQ.<br>FONTAINE & BEAL<br>P O BOX 7590 - 482 Congress Street<br>PORTLAND ME 04112 | RUDMAN & WINCHELL<br>P O BOX 1401<br>BANGOR ME 04402-1401<br>BY: John W. McCarthy, Esq.<br>FOR: All Defendants |

Date of Entry

3/2/00    Complaint filed.

3/3/00    Case File Notice Postcard forwarded to Plaintiff's counsel.

3/9/00    Motion for Attachment and Trustee Process filed by Plaintiffs.

3/9/00    Memorandum of Law in Support of Plaintiffs' Motion for Attachment and
          Trustee Summons with Attached Affidavits filed by Plaintiffs.

3/9/00    Certificate of Service filed by Plaintiffs.

3/15/00   Officer's Return of Service as to Sherman Lumber Company filed.
          (s.d. 3/9/00 by Robert E. Sutcliffe, Clerk)

3/24/00   Request for Hearing on Motion for Attachment filed by Plaintiff.

3/24/00   Officer's Return of Service as to Al Ellis filed (s.d. 3/11/2000)

3/24/00   Officer's Return of Service as to Craig E. Robinson filed (s.d. 3/17/2000)

3/24/00   Officer's Return of Service as to Michael A. Robinson filed (s.d. 3/17/2000)

3/27/00   Copy of Notice of Removal to United States District Court for the
          District of Maine filed by Defendants.

3/27/00   MATTER REMOVED TO UNITED STATES DISTRICT COURT FOR DISTRICT OF MAINE.

8/30/2000 Case remanded from the United States District Court. The following papers
          were received and filed and entered: (Docket No. 00-cv-57-B)

          1. 3/27/00    Notice of Removal w/cc of complaint & Motion for Attachment
          2. 3/27/00    Motion by Defendants for Extension of Time to Answer
          3. 4/3/00     Motion for leave to file in excess of page limits
          4. 4/3/00     Motion to Dismiss and Motion for Summary Judgment